### In re MANHATTAN MUSIC HALL, Inc.

District Court, S. D. New York.
March 6, 1936.

The opinion of Stephenson, Referee, is as follows:

Manhattan Music Hall, Inc., the debtor herein, operated a restaurant and cabaret at 1697 Broadway, New York City. On January 19, 1935, McKesson & Robbins, Inc., Anthony Ochs & Co., Inc., and Cluff Pickering, Limited, creditors, filed an involuntary petition under section 77B of the Bankruptcy Act (as added by 48 Stat. 912, § 1 [11 U.S.C.A. § 207]) against the above-named debtor. The debtor filed a consent and answer; and thereafter an order was made approving the petition filed, staying proceedings, and continuing the debtor in possession. On March 8, 1935, the court was informed that no plan of reorganization could be submitted by the debtor, and

the creditors' committee felt that the matter should be liquidated. On March 9, 1935, the court signed an order which directed "that the proceedings herein under section 77B of the Bankruptcy Act, be and the same hereby are dismissed and that the estate be liquidated"; ordered that Richard M. Page be appointed trustee of all the property "of the above named bankrupt" (sic); fixed the trustee's bond in the sum of $2,500; empowered the trustee to take possession of all the property of "said bankrupt." The order also contained a number of injunctions to protect the trustee; appointed three appraisers and fixed the maximum compensation, of each per day; permitted the trustee to sell at public auction all the personal property of the "bankrupt;" ordered the filing of schedules; referred the matter to Robert P. Shephenson, one of the referees in bankruptcy of this court, to take all such further proceedings herein as are required by the acts of Congress relating to bankruptcy, and all such acts herein as the court might take or perform, except such as by law or the general orders of the Supreme Court are required to be performed by the judge; and also authorized the trustee to retain David Berdon & Co., accountants, to audit the books and records of the "bankrupt," for a fee not to exceed the sum of $250.

*Richard M. Page, Trustee to Liquidate.* The said trustee duly qualified, took possession of the debtor's premises and its property for six weeks, and then turned over said premises and property to Arthur J. Vernon, who was elected permanent trustee. He retained Lawrence Berenson as his attorney pursuant to court order. Numerous claims of conditional bills of sale, chattel mortgages, and leases of personal property were filed with the liquidating trustee. He held conferences almost daily with his counsel, the claimants, and their attorneys. He arranged with the landlord to remain in possession, rent free. He employed one person throughout the time he was in possession of the debtor's premises. In addition to the property, he received $119.88 in cash and disbursed $119.90. He asks for an allowance of $350.

*Lawrence Berenson, for Services as Attorney for Said Trustee.* These services cover a period of approximately 6 weeks on 23 separate days. They are set forth in a schedule annexed to the petition. His principal services were conferences with the trustee and claimants under conditional bills of sale and chattel mortgages and their attorneys. He examined the various conditional bills of sale and chattel mortgages so as to be able to advise the trustee thereon. He gave his attention to various applications and orders to show cause in reclamation proceedings, and successfully defeated the motion of Johnson Service, claimant. It appears from the schedule that most of the services were telephone conversations and conferences with the trustee. He asks for an allowance of $500.

*Manick H. Blum, Jr.* This petitioner states that he is president of the Alcoholic Products Adjustment Bureau, Inc., which bureau is secretary of the creditors' committee, and that this application is for an allowance for services rendered as secretary to the creditors' committee. He states that he, as president of the Alcoholic Products Adjustment Bureau, Inc., sent notices to all creditors to attend a meeting at the Hotel McAlpin on January 24, 1935, which meeting he attended, and at which meeting a creditors' committee was appointed, and the Alcoholic Products Adjustment Bureau, Inc., elected secretary. He further states that he executed an affidavit asking for an order permitting creditors to intervene; called a meeting of the creditors' committee for February 13, 1935, which meeting he attended; attended a meeting before Judge Caffey on February 15, 1935; called a meeting of creditors for March 7, 1935; appeared before Judge Caffey on the adjourned hearing on the order to show cause to continue the debtor in possession, at which hearing the court directed the estate to be liquidated; all the services were rendered by the petitioner for and on behalf of the Alcoholic Products Adjustment Bureau, Inc., as secretary of the creditors' committee; and that he disbursed the following:

1. Hotel McAlpin charge for the meeting room for one day....... $15.00
2. Three meetings held at the offices of the Alcoholic Products Adjustment Bureau, Inc., 7 E. 42 Street, New York..................... 15.00
3. Stamps for notices to creditors of three meetings................. 7.40
4. Mimeographed notices to creditors of three meetings.......... 9.00

He asks that he be allowed $250 on behalf of the Alcoholic Products Adjustment

Bureau, Inc., secretary of the creditors' committee, plus out-of-pocket disbursements amounting to $46.40.

*Arthur J. Vernon, Chairman of the Creditors' Committee.* This application is for an allowance for services rendered by him as chairman of said committee. He attended a general meeting of creditors at the Hotel McAlpin at which a creditors' committee consisting of the following was appointed, and he was elected chairman: Arthur J. Vernon, chairman, of Thomas J. Molloy & Co.; Joseph Newman of Browne, Vintners Co.; Norman Tiger of Anthony Ochs & Co.; Milton Wertheimer of Waterman & Co.; Herman Greenberg of Capitol Dist. Corp.; Severin F. Scott of McKesson & Robbins, Inc.; Edward Singleton, Secretary, of Alcoholic Products Association.

He executed an affidavit on behalf of the creditors' committee in support of a petition for an order to permit the creditors to intervene. He attended a meeting of creditors on February 13, 1935. On February 15, he attended a hearing before Judge Caffey. On March 7, 1935, he attended a meeting of the creditors' committee to discuss what steps were to be taken in these proceedings. On March 8, 1935, he appeared before Judge Caffey on the adjourned hearing of the order to show cause to continue the debtor in possession, at which meeting Judge Caffey directed the estate to be liquidated. All of the services were rendered for and on behalf of the creditors' committee as chairman. Although not stated in the petition, Arthur J. Vernon, at the first meeting of creditors, was elected trustee, has qualified, and is now acting as trustee herein.

*Joseph Dannenberg and Goldman, Malter & Goldman, Attorneys for the Petitioning Creditors and the Creditors' Committee.* On January 18, 1935, the petitioners drew a lengthy involuntary petition under section 77B of the Bankruptcy Act, had the same executed, and filed the same on January 19, 1935. On that day they advised the attorneys for the debtor thereof and were informed that an answer admitting the allegations of the petition and the consent to the entry of an order approving the petition would be filed. On January 20, 1935, the attorneys for the debtor submitted figures of the assets and liabilities of the debtor. They arranged a hearing before Judge Caffey for January 21, 1935, appeared on that date with the attorneys for the debtor, and discussed the various provisions and conditions to be contained in an order approving the petition. They prepared a lengthy order approving the petition, staying all creditors and directing creditors to show cause why the debtor should not be continued in the possession of its property and continue to operate its business, or in the alternative why a trustee should not be appointed, and directing the debtor to give notice of the aforesaid hearing by mail and publication. This order was signed on January 21, 1935, and copies served on the attorneys for the debtor. On February 15, 1935, the petitioners informed the court that no plan of reorganization had as yet been submitted, nor was the debtor ready to submit any; and the hearing was adjourned to March 8, 1935. On March 8, 1935, the petitioners appeared before the court, and informed the court that no plan of reorganization could be submitted by the debtor. They thereupon drew a petition and lengthy order to liquidate the estate, appointing a trustee, appraisers, auctioneer, and referee, and authorizing the trustee to retain accountants. This order was signed on March 9, 1935. All the services were rendered on behalf of the petitioning creditors and creditors' committee.

The services outlined above are in my opinion all the services in the petition rendered on behalf of the petitioning creditors while performing the duties prescribed by the Bankruptcy Act. The other services were for the creditors' committee, and were as follows: They attended a meeting of creditors at the Hotel McAlpin on January 24, 1935, at which the attorneys for the debtor stated that they had no definite plan of reorganization to present, but that the reorganization depended wholly upon their success in consummating negotiations for entertainers and outstanding performers to justify the investment of new capital in the reorganization of the business. At this meeting a creditors' committee was appointed, and the petitioners were elected attorneys for said committee; and, pursuant to the direction of the committee, the petitioners drew a petition, affidavits of various members of the committee, and an order permitting the creditors' committee to intervene, which order was consented to by the attorneys for the debtor, submitted to the court, and signed on February 4, 1935. A copy was served on the attorneys for the debtor. They attended a meeting of creditors on February 13, 1935, and on

March 7, 1935. They had several consultations with members of the committee and creditors relative to these proceedings, and a large amount of correspondence. They ask for an allowance of $750, as attorneys for the petitioning creditors and creditors' committee, and disbursements of $134.60.

*Blau, Perlman & Polakoff, Attorneys for the Debtor.* The petitioners prepared and filed an answer with the necessary corporate resolutions authorizing the consent to the entry of an order approving the involuntary proceedings for the reorganization instituted under section 77B of the Bankruptcy Act, and caused said consent to be filed; appeared before the court, and the debtor was continued in possession; served copies of restraining orders on various creditors; prepared and sent notices to all creditors, pursuant to court order, for hearing to be held on February 15, 1935, and published such notice; conferred with officers of debtor corporation on conduct of its business; attended meetings of creditors; attended court when adjournment was granted; prepared schedule of assets and liabilities, and filed same; appeared before court and advised court of debtor's inability to effect a reorganization.

In a supplemental petition they state that they received no compensation for their services, and that from January 19 to March 8, 1935, petitioners as attorneys for the debtor performed all services that would necessarily be performed by an attorney for a receiver or attorney for a trustee. What these services are is not enumerated. They ask for an allowance of $250.

*David Berdon & Co., Accountants.* The accountants were retained by the liquidating trustee pursuant to court order, which fixed their compensation at not more than $250. According to the time consumed and the usual rates charged by accountants, petitioners state that their services are worth $490. They ask for an allowance of $250.

Although the order of March 9, 1935, orders that the proceedings be, and the same hereby are, dismissed, it proceeds to order that the estate be liquidated, and appoints a trustee. These two provisions of the order are inconsistent, for under paragraph (c), subd. (8), of section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207 (c) (8), the court could either dismiss or order liquidation. If it dismissed the proceedings, it would no longer have the right to order

liquidation. I assume, therefore, that, since this order directs liquidation and appoints a trustee, the court did not dismiss the proceedings. I also assume that the word "bankrupt" used in the order means "debtor," although the act provides: "The corporation shall be referred to in the proceedings as a 'debtor.'"

The sections and paragraphs of the Bankruptcy Act applicable to these applications are as follows: Section 77B, par. (c), subds. (8) and (9) of the act, 11 U.S.C. A. § 207 (c) (8, 9); section 77B, paragraph (k), of the act, 11 U.S.C.A. § 207 (k); section 64, par. (b) of the act, as amended, 11 U.S.C.A. § 104 (b).

These sections are as follows:

Section 77B:

"(c) Upon approving the petition or answer or at any time thereafter, the judge, in addition to the jurisdiction and powers elsewhere in this section conferred upon him, * * * (8) if a plan of reorganization is not proposed or accepted within such reasonable period as the judge may fix, or, if proposed and accepted, is not confirmed, may, after hearing, whether the proceeding be voluntary or involuntary, either extend such period or dismiss the proceeding under this section or, except in the case of a railroad or other public utility or of a debtor which has not been found by the judge to be insolvent, direct the estate to be liquidated, or direct the trustee or trustees to liquidate the estate, appointing a trustee or trustees if none shall previously have been appointed, as the interests of the creditors and stockholders may equitably require; (9) may allow a reasonable compensation for the services rendered and reimbursement for the actual and necessary expenses incurred in connection with the proceeding and the plan by officers, parties in interest, depositaries, reorganization managers and committees or other representatives of creditors or stockholders, and the attorneys or agents of any of the foregoing and of the debtor, but appeals from orders fixing such allowances may be taken to the Circuit Court of Appeals independently of other appeals in the proceeding and shall be heard summarily. * * *

"(k) If an order is entered directing the trustee or trustees to liquidate the estate pursuant to the provisions of clause (8) of subdivision (c) of this section: (1) The case may be referred to a referee as provided in section 22 [section 45 of this title], who shall be compensated as provided

in section 40 [section 68 of this title]; (2) the first meeting of creditors shall be held as provided in section 55 [section 91 of this title], upon notice as provided in section 58 [section 94 of this title]; (3) a trustee or trustees shall be appointed as provided in section 44 [section 72 of this title], and be compensated as provided in section 48 [section 76 of this title]; (4) claims which are provable under section 63 [section 103 of this title] may be proved as provided in section 57 [section 93 of this title], except that the time within which proof may be made shall not expire until six months after the date of the last publication of the notice of the first meeting; (5) debts shall be entitled to priority as provided in section 64 [section 104 of this title]; (6) sales shall be made as provided in subdivision (b) of section 70 [section 110 of this title]; (7) dividends may be declared and paid as provided in section 65 [section 105 of this title]. None of the sections enumerated in this subdivision (k), except subdivisions (g), (i), (j), and (m) of section 57 [section 93 of this title], and subdivisions (a) and (e) of section 70 [section 110 of this title], shall apply to proceedings instituted under this section [77B] unless and until an order has been entered directing the trustee or trustees to liquidate the estate. All other provisions of this Act [title], except such as are inconsistent with the provisions of this section [77B], shall apply to proceedings instituted under this section, whether or not an order to liquidate the estate has been entered. For the purposes of such application, provisions relating to 'bankrupts' shall be deemed to relate also to 'debtors'; 'bankruptcy proceedings' or 'proceedings in bankruptcy' shall be deemed to include proceedings under this section; the date of the order approving the petition or answer under this section shall be taken to be the date of adjudication, and such order shall have the same consequences and effect as an order of adjudication."

Section 64:

"(b) The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment shall be (1) the actual and necessary cost of preserving the estate subsequent to filing the petition; (2) the filing fees paid by creditors in involuntary cases, and, where property of the bankrupt, transferred or concealed by him either before or after the filing of the petition, shall have been recovered for the benefit of the estate of the bankrupt by the efforts and at the expense of one or more creditors, the reasonable expense of such recovery; (3) the cost of administration, including the fees and mileage payable to witnesses as now or hereafter provided by the laws of the United States, and one reasonable attorney's fee, for the professional services actually rendered, irrespective of the number of attorneys employed, to the petitioning creditors in involuntary cases while performing the duties herein prescribed, and to the bankrupt in voluntary and involuntary cases, as the court may allow; (4) where the confirmation of composition terms has been refused or set aside upon the objection and through the efforts and at the expense of one or more creditors, in the discretion of the court, the reasonable expenses of such creditors in opposing such composition; (5) wages due to workmen, clerks, traveling or city salesmen, or servants, which have been earned within three months before the date of the commencement of the proceeding, not to exceed $600 to each claimant; (6) taxes payable under paragraph (a) hereof and (7) debts owing to any person who by the laws of the States or the United States is entitled to priority: Provided, That the term 'person' as used in this section shall include corporations, the United States and the several States and Territories of the United States."

This is, in my opinion, a case where the court has ordered liquidation under paragraph (k) of section 77B, and not a case where the court dismissed the proceedings (as the order in one part states), and that therefore the provision of paragraph (k), subdivision (5), 11 U.S.C.A. § 207 (k) (5), applies. Subdivision (5) is mandatory ("shall") in stating how the estate is to be distributed, and therefore supersedes the permissive power ("may") under section 77B, par. (c) (9), by which the judge "may" allow reasonable compensation and reimbursement for expenses to parties therein named. Section 64 (b), which alone becomes applicable in this case, contains complete directions for the distribution of an estate in bankruptcy and the order of priority. Where it speaks of debts to have priority, it means not only debts existing against the bankrupt, but also debts arising after the petition, due as result of the administration of the estate. Hence the court has power only to make such allowances as are provided for in

section 64 (b). This section makes no provision for the payment, either as compensation or for disbursements, to any creditors' committee or to any of its employees or attorneys. In re Realty Associates Securities Corporation (C.C.A.) 69 F.(2d) 41. Such services are not expenses connected with the preservation of the estate subsequent to the filing of the petition; nor are they costs of administration of the estate. They are in fact services by such committee and its employees on behalf of themselves and the creditors whom they represented, and are not part of the cost of administration. Opinion of Coxe, D. J., in Re Paramount-Publix Corporation, Debtor, 12 F. Supp. 823, dated October 23, 1935. Hence no allowance can be made to Arthur J. Vernon for services rendered as chairman of the creditors' committee, nor to Manick H. Blum, Jr., for services and disbursements, nor to Joseph Dannenberg and Goldman, Malter & Goldman, in so far as their services and disbursements were rendered as attorneys for the creditors' committee, nor to Blau, Perlman & Polakoff, in so far as their services were rendered in connection with the possible reorganization of the debtor.

The petition of Manick H. Blum, Jr., states that he is president of the Alcoholic Products Adjustment Bureau, Inc., which bureau is secretary of the creditors' committee, and that he is making application for an allowance for services rendered as secretary to the creditors' committee. From his petition it appears that he was not secretary, but that the Alcoholic Products Adjustment Bureau, Inc., was secretary. None of the services were in any way connected with the administration of the estate, and none of his disbursements were so connected. He states that he paid the Hotel McAlpin $15 for a meeting room for one day, and that he paid the Alcoholic Products Adjustment Bureau, Inc., $15 for three meetings, and he also asks for reimbursement of $7.40 for stamps for notices to creditors of three meetings, and expenses of mimeographing said notices to creditors. All of such services and disbursements were on behalf of creditors and the creditors' committee, and not on behalf of this estate. Therefore no allowance can be made.

Arthur J. Vernon asks for an allowance for services rendered as chairman of the creditors' committee. He has been elected permanent trustee herein, and has not, as such trustee, opposed the application of Arthur J. Vernon for $250.

An allowance should be granted to Joseph Dannenberg and Goldman, Malter & Goldman for services as attorneys for the petitioning creditors. Under section 64 (b) (3) of the act, 11 U.S.C.A. § 104 (b) (3), the fee for such services is limited to one reasonable attorney's fee, irrespective of the number of attorneys employed, while performing the duties prescribed. Such duties would be in this case only the drawing and filing of the petition under section 77B, preparation of an order approving the petition as filed and staying creditors, and the preparation and submitting of an order directing liquidation. Under section 64 (b) (2) of the act, 11 U.S.C.A. § 104 (b) (2), the filing fee paid may be recovered. In this case the filing fee was $130. They claim $2.60 for certified copies of orders which appears to be reasonable; but the item of $2 for carfares and outside telephone calls should be disallowed. I therefore recommend the allowance of disbursements to the attorneys for the petitioning creditors in the sum of $132.60. It may be that the court should not allow the return of a filing fee of $130 unless the petitioners show that they had reasonable cause for believing that the reorganization under section 77B could be effected. Whether such reasonable ground existed in fact, I cannot tell, but certainly it has not been shown in any of the petitions that there was reasonable ground for believing that the debtor could be reorganized. It appears that the debtor operated a restaurant and cabaret and that much of its property was held under conditional sales and chattel mortgages. The only suggestion made in any of the petitions was the possibility that the debtor might consummate negotiations for entertainers and outstanding performers to justify the investment of new capital. The reasonable probability of such reorganization must have been known far better to the debtor than to any of the petitioning creditors, and there was no reason for the petitioning creditors to file this petition rather than the debtor. I recommend an allowance to Goldman, Malter & Goldman and Joseph Dannenberg, for their services as attorneys for the petitioning creditors, the sum of $100, together with disbursements of $132.60. I recommend no allowance to them for services as attorneys for the creditors' committee for the reasons above stated. In re Eureka Upholstering Co., Inc. (C.C.A.) 48 F.(2d) 95;

In re Consolidated Factors Corporation (C.C.A.) 59 F.(2d) 193.

Richard M. Page was appointed liquidating trustee. He was not the trustee appointed as provided by section 77B (k) (3) and section 44 of the act, 11 U.S.C.A. §§ 72, 207 (k) (3). Therefore his compensation is not limited by section 48 of the act, 11 U.S.C.A. § 76, but he may be allowed a reasonable compensation for services in so far as they preserved the estate. He had very little to do, but found it necessary to consult with his attorney and with persons claiming under conditional sales and chattel mortgages and protect the interest of the estate therein. He was such liquidating trustee from March 9, 1935, to April 23, 1935. In my opinion, a reasonable allowance to him for his services is $150. He also states that there is a balance due E. B. Vanderveer for services rendered as custodian in the sum of $60. I do not recommend the payment of this amount to the liquidating trustee, but, if Mr. Vanderveer has any claims against this estate, he should seek the same from the present trustee or by petition therefor.

Lawrence Berenson was retained as attorney for the liquidating trustee pursuant to court order. I have heretofore outlined the services rendered by him, and in my opinion a reasonable allowance for such services is $200.

Blau, Perlman & Polakoff are the attorneys for the debtor. Allowance should be made only for such services rendered by them as enabled the debtor to perform the duties required of it under the act or under court order. These services consist of an appearance, the filing of an answer, consenting to an order approving the petition, preparation and filing of schedules, and the sending of notices to creditors as required by the order approving the petition. For such services I recommend an allowance of $150. Among their disbursements are amounts of $20 for Southern District Court Reporter and $3.50 for miscellaneous disbursements. I recommend that these two items be disallowed, as the necessity for them is not shown. I recommend the allowance of disbursements in the sum of $24.05.

David Berdon & Co. were retained as accountants, pursuant to court order, by the liquidating trustee. This order limited their compensation to $250. I recommend an allowance to them of $250.

O'Neil & Collins, of New York City, for trustee.

Joseph Dannenberg and Goldman, Malter & Goldman, all of New York City (Julius M. Arnstein, of New York City, of counsel), for creditors' committee.

Lawrence Berenson, of New York City, for temporary trustee.

CAFFEY, District Judge.

I heard oral argument in this case January 3. I have not had opportunity until now to examine the papers.

For reasons which will appear, in their nature the matters involved divide themselves into two classes: (1) Those in which allowances were denied; (2) those in which allowances were awarded. These will be separately discussed in order.

The proceeding was initiated by an involuntary petition for reorganization, in conformity with subdivision (a), under section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207 (a). An answer, containing the admissions prescribed by the same subdivision in such cases, was filed. The filing of the petition was thereupon approved. Subsequently, no plan of reorganization having been forthcoming, a liquidation of the estate was directed. In form the order on the decision to that effect, dated March 9, 1935, (1) directed that the 77B petition be dismissed; (2) directed that the estate be liquidated; (3) appointed a trustee, as provided for in section 77B, subd. (c) (8), of the act, 11 U.S.C.A. § 207 (c) (8); and (4) referred the case to a referee, as provided for in subdivision (k), 11 U.S.C.A. § 207 (k). There is apparent inconsistency between clause 1 and clauses 2, 3, and 4. Nevertheless, considering the order in its entirety, I agree with the referee in feeling that it should be treated, and can only be construed, as an order directing liquidation, made pursuant to subdivision (c) (8).

In due course a trustee (different from the liquidating trustee, and in fact being one who had been chairman of a creditors' committee up to the date of the liquidation order), was appointed in conformity with section 77B, subd. (k) (3), of the act, 11 U.S.C.A. § 207 (k) (3). He has in hand an estate of $1,790, though the referee says that it is not yet ready to be closed and that more assets may be discovered. The applicants ask present payment by the per-

manent trustee, appointed at the first meeting of creditors.

The total sought for compensation and disbursements was $2,888.55. The referee wholly disallowed pay on either account to (1) the chairman of the creditors' committee, (2) the secretary of the committee, (3) counsel for the committee, and (4) a custodian of the liquidating trustee. The first three items, aggregating $1,198.40, were denied because, as the referee held, there was no power to grant them. The fourth item, for $60, was not seasonably applied for, but leave was granted to renew application for it. It will therefore be disregarded. What is of consequence, and raises a question important as well as novel, is the disallowance of anything to members of, and counsel for, the committee. That I shall discuss at some length.

The committee and its counsel functioned as such only during the 77B proceeding and up to the date when the court refused to extend the period further for proposing a plan of reorganization. They do not base their claims, even in part, on anything done by them after the liquidation order.

The defeated applicants argue that they were sincere; also that fairness and equity demand that they be paid.

Without disputing the quality of the behavior of, or the justice of remuneration from some source to, the applicants, still I am impressed that their contentions are wholly irrelevant. The sole issue is one of statutory interpretation. The only problem is to discover what Congress meant. Plainly that is to be ascertained by examination and analysis of the language which Congress employed.

 I concur with the conclusion reached by the referee; also with his grounds for it. In my view, he has put the matter so well that I shall rest on his opinion and I refrain from attempting a restatement. I shall add to it and shall consider some arguments which I infer were not addressed to him.

As I see it, there is no escape from treating the word "shall," used in section 77B, subd. (k) (5) of the act, 11 U.S.C.A. § 207 (k) (5), as mandatory.

In urging the contrary, the defeated applicants assign no convincing reason. They say that, unless the court possess power to award them pay, they may render much service without being compensated out of the estate. I see nothing startling about a result such as that, however. It is common practice in general litigation, as well as in bankruptcy litigation, for creditors, individually or in co-operation or through counsel, to do much, and much which enhances the estate involved, and yet bear their own expenses. It is only in the instances specified by statute that compensation can properly be claimed out of the estate. The contention that because, in the circumstances, they would get no pay out of the estate, as I see it, fails, therefore, to afford basis for presuming that Congress intended that they should get pay in that way.

Moreover, it must not be overlooked that we are dealing with a case where reorganization failed. It is not irrational to suppose that Congress intended the power of the court defined in section 77B, subd. (c) (9), of the act, 11 U.S.C.A. § 207 (c) (9), to apply, so far as concerns compensation of creditors and their counsel, only where the effort at reorganization succeeded. It is not irrational to suppose that it was the deliberate purpose, where liquidation ensued, to remit creditors and their counsel to the general provisions of the Bankruptcy Act for determination of whether they were entitled to pay out of the estate, including pay for what preceded the liquidation order.

The consequence of the word "shall," being in its nature mandatory, is, as I feel, that in a case such as the present, which has come within subdivision (k) (5), the authority conferred by the word "may" in subdivision (c) (9) is inapplicable, or, to put it otherwise, was terminated.

One argument for the opposite interpretation, as I understand it, is that subdivision (c) (9) must be read in immediate conjunction with subdivision (c) (8), and therefore that the authority given to the judge by subdivision (c) (9) must be deemed to continue in existence after a liquidation direction pursuant to subdivision (c) (8). It does not seem to me, however, that the conclusion follows from the premise. If section 77B (c) (9), 11 U.S.C.A. § 207 (c) (9), continue after the case passes into charge of the referee, pursuant to subdivision (k) (1), 11 U.S.C.A. § 207 (k) (1), then do subdivisions (c) (10) and (c) (11), 11 U.S.C.A. § 207 (c) (10, 11), also continue in effect? Why not? Yet manifestly they do not. It would be inconsistent with the referee having charge of the case,

and exercising his usual powers in such a situation, if the judge, after a liquidation direction, were to interpose with the appointment of a master under subdivision (c) (11) or even with injunctions or stays under subdivision (c) (10).

Subdivision (c) contains a long list of powers with which the statute endows the judge. One may suggest that the order in which they are arranged is not thoroughly logical. However that may be, at least it seems to me that it would be attributing undue significance to sequence to treat the authority mentioned in subdivision (c) (9) as kept alive, subsequent to a liquidation direction under subdivision (c) (8), by the mere fact of its adjacency. At least we must go so far as to say that such adjacency is not enough to require that the "may" of subdivision (c) (9) be treated as nullifying or limiting the "shall" of subdivision (k) (5).

Again, for what is it that subdivision (c) (9) empowers the judge to make an allowance? What is said? It is "for the services rendered and * * * for the actual and necessary expenses incurred in connection with the proceeding and the plan." Accepting this as defining what is comprehended within what may be paid for out of the estate, do the facts of the case at bar bring the rejected petitions within the prescribed area? It seems to me not. Certainly there was never a plan; nor do I feel that any of the disbursements were expenses "necessarily" incurred "in connection with the proceeding." The committee and its counsel represented creditors. They acted in behalf of creditors. They did not act for the debtor. It may be conceded that they genuinely desired a reorganization, but what they did was, so far as concerns the estate, the work of volunteers; volunteers who, if the plan had been put through, might or might not have received some compensation out of the estate. The services of the committee were services in behalf of the creditors themselves. It seems to me that it would be a far cry to class such work as "services rendered * * * in connection with the proceeding" in the sense in which those words are used in subdivision (c) (9).

It is also contended that, because the court made an order permitting the committee to intervene, the position of themselves and their counsel, as candidates for pay out of the estate, was strengthened. I do not agree to this. As I see it, the maximum of any gain by intervention was to entitle themselves, with certainty, to notice and opportunity to be heard, in the phraseology of the latter part of subdivision (c) (11), on such questions as the judge might prescribe other than on "the permanent appointment of any trustee or trustees, and on the proposed confirmation of any reorganization plan."

It is further urged that what was done and expended by the committee and its counsel, preceding the liquidation order, was part of "the actual and necessary cost of preserving the estate" after the 77B petition was filed, and that hence, within these words quoted from subdivision (b) (1) of section 64 of the Bankruptcy Act, 11 U.S.C.A. § 104 (b) (1), the applicants are entitled to the allowances refused to them. I think there are two sufficient answers. (1) In my view, the facts would not support a finding such as is a necessary predicate for the legal position taken by the committee and its counsel. (2) My attention has not been drawn to, nor have I discovered, any court decision which would sustain the legal proposition advanced. In re Realty Associates Securities Corporation (C.C.A.) 69 F.(2d) 41, 42, 43. See, also, In re Rollin Motors Co. (D.C.) 23 F.(2d) 110; Mortgage Loan Co. v. Livingston (C. C.A.) 78 F.(2d) 517.

Another aspect of subdivision (k), § 77B, 11 U.S.C.A. § 207 (k), remains for consideration.

In the first place, it is there provided that "none of the sections enumerated in this subdivision (k)" (except specified portions of sections 57 and 70 of the act, 11 U.S.C.A. §§ 93, 110) "shall apply to proceedings instituted under this section [77B] unless and until an order has been entered directing the trustee or trustees to liquidate the estate." Section 64 of the act (11 U.S.C.A. § 104) is included in this clause. The effect, as to section 64, is to prohibit application of the section during the 77B proceeding, down to the point of the liquidation order. As it seems to me, there is an inescapable implication also, however, that section 64 does apply after the liquidation order.

In the second place, subdivision (k) says that, irrespective of whether or not a liquidation order has been entered, all other provisions of the general Bankruptcy Act (save those which are inconsistent with section 77B) shall apply to proceedings instituted under section 77B, and that

"for the purposes of such application," among other things, the date of the order approving the petition (under section 77B) "shall be taken to be the date of adjudication, and such order shall have the same consequences and effect as an order of adjudication." The part of the subdivision just quoted, it is to be observed, does not relate to section 64.

It seems to me worthy of note that the portion of subdivision (k) extracted in the first of the last two paragraphs expressly deals with section 64, and that the portion extracted in the second of those paragraphs explicitly does not deal with section 64. This impresses me as having significance. If so, what is it?

Both portions have to do with the extent of applicability of sections of the general bankruptcy law outside of section 77B. Both fix dates for the commencement of applicability. The beginning date of applicability of the group of sections including section 64 is the date of the liquidation order. The beginning date of applicability of the group of sections excluding section 64 is the date of approval of the 77B petition. There is no ambiguity about this. It is perfectly definite. The design is clear. Incontrovertibly the purpose is to prescribe different effective dates for the coming into operation of the two groups of sections in the class of cases in which the filing of 77B petitions is approved. The duty to preserve and enforce the line of demarcation, so drawn, is manifest.

It follows that the date of the liquidation order governs in applying section 64. It would do violence to the language of the statute to treat section 64 as relating back to the date the petition was filed. If that view be accepted, it seems with equal certainty to follow that, after a liquidation order, section (c) (9) ceases to be operative. If it were otherwise, two conflicting provisions of the statute would operate in the identical field at the same time.

I believe it is indisputable that the word "debt" is used in the same sense in subdivision (k) (5) and in section 64. If so, then the context in section 64 demonstrates that it covers all items for which applications were made in the case at bar; both those disallowed and those allowed. The question of whether the applications of the committee and its counsel are allowable under section 64 has already been sufficiently dwelt on.

Accordingly, I confirm the report in so far as it recommends disallowances.

Turning to the allowances recommended, additional facts must be considered.

(1) The available gross estate is $1,790 in cash. The referee's certificate recites that the estate is not ready to be closed. He also says, though he does not explain why he thinks, that additional assets may be discovered. The present applications cover services and disbursements only to the date the permanent trustee was appointed at the first meeting of creditors. There will necessarily be further administration expenses in connection with what has occurred since that date and shall occur in future. Neither the permanent trustee nor his counsel has yet made an application. The claim of a custodian for the liquidating trustee remains to be dealt with. The referee will have a claim. There may be other claims.

(2) Confining ourselves to the applications so far filed, the amounts asked for (taking the item for petitioning creditors' attorneys at the sum recommended to be allowed) total $1,630.15; the sums recommended to be allowed aggregate $1,006.65, or upwards of 56 per cent. of the estate; the allowance of those sums would leave $783.35, or a little more than 43 per cent. of the estate.

(3) Unless assets of the estate be hereafter increased by discovery, for which the record contains nothing to substantiate a prospect, out of the balance of $783.35 (upon approval of the allowances recommended), there must be paid allowances to the permanent trustee and his counsel, as well as other as yet undisclosed administration expenses, and thus necessarily what would be left for creditors would be reduced, and probably materially reduced, below $783.35.

If the estate were now ready to be wound up, the allowances presently recommended covered all administration expenses, and the entire balance after their payment went to creditors, the distribution would be approximately 56 per cent. to administration expenses and approximately 43 per cent. to creditors. As outcome for creditors is a prime factor in fixing allowances, the ratio stated obviously challenges attention. For the moment I express no opinion about it. I refrain from making any statement because I feel compelled to leave the matter for determination by another judge. I should not now say anything on

the subject which he might deem to hamper him in reaching a decision on the merits when the case later comes before him.

Inasmuch as the applications on which allowances have been denied rest chiefly, if not wholly, on subdivision (c) (9), and it has been held by the referee, with the court's approval, that there is lack of power to grant the applications, it may be that under the last part of the clause, or under some other provision of law, the applicants are entitled to review the ruling before the estate is distributed. They should have opportunity to seek a review, if they act speedily.

As previously pointed out, other allowances, for which no applications have yet been presented, must be made.

In these circumstances, I feel that the applications on which the referee has recommended that allowances be made should be postponed, and they will be postponed, until the final meeting of creditors. In so far as I can see, that is the only way by which there can be fair treatment of all concerned.

Settle order accordingly on two days' notice.