**LANE et al. v. HAYTIAN CORPORATION OF AMERICA.**

No. 126.

Circuit Court of Appeals, Second Circuit.

Jan. 13, 1941.

Wise, Shepard, Houghton & Lebett, of New York City (John W. Kelly and Frank J. Podesta, both of New York City, of counsel), for debtor-appellant.

Krause, Hirsch & Levin and Brown, Brenton & Watts, all of New York City (Sydney Krause, of New York City, of counsel), for appellees Erle R. Lane, C. A.

Richmond, F. A. Goddard, and Ralph W. Thomas, constituting Creditors' Committee of Haytian Corporation of America.

Louis Boehm, of ·New York City, pro se (Louis Boehm and Samuel Zeiger, both of New York City, of counsel), for appellee Prince Committee.

Before L. HAND, SWAN, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

A petition for an arrangement of its unsecured debts was filed October 29, 1938, by Haytian Corporation of America; this was followed, December 8, 1938, by an amendment of the original plan and then by a "Second Modified Arrangement," May 12, 1939; and this last proposal was accepted by the debtor's creditors and confirmed by the referee, July 11, 1939. In the order of confirmation, the referee retained jurisdiction to pass on "the propriety and reasonableness of any and all applications for fees, allowances and disbursements hereafter filed herein" pursuant to Paragraph XI of the final plan, which provided:

"Subject in all respects to the approval of the Court as to the reasonable value and amount thereof, the Debtor proposes to pay compensation for, and expenses and disbursements of, (1) the Creditors' Committee duly appointed by the Court, the Hanson Committee, the Wales Committee and the Prince Committee, whose expenses and disbursements shall include the fees and disbursements of their respective attorneys and counsel, (2) the attorneys for the Debtor, and (3) the attorneys for the corporate Trustee under the Debenture Bond Agreement."

The Creditors' Committee had been elected at the first meeting of creditors, December 5, 1938, and had been composed of two nominees of the Hanson Committee, which was originally organized in July, 1936, and two of the Wales Committee, organized between the date of the petition and the meeting. The Prince Committee was a third unofficial representative of creditors, organized shortly after the first meeting of creditors.

After the filing of applications and hearings thereon subsequent to the confirmation of the plan, the referee entered an order denying in toto the petition of the Prince Committee for $2,500 fees and $88.38 expenses, that of Louis Boehm as its attorney, for a $10,000 fee, and that of the Of-

ficial Creditors' Committee for $7,000 to be paid members of the Hanson Committee, $5,500 to be paid members of the Wales Committee, and $1,928.25 and $1,834.79 to be allowed each of these last-named committees respectively as expenses. The referee did, however, make certain allowances, including substantial fees to the attorneys for the debtor and to the attorneys for the Creditors' Committee; these are uncontested here. On petitions by the Prince Committee, Boehm, and the Creditors' Committee for review of the referee's adverse rulings, the district court reversed and referred the case back to the referee to ascertain the reasonable value of the services and ·disbursements for which allowances had been claimed, on the ground that the "firm engagement" of Paragraph XI made these allowances a "matter of contract," not a question of "a statutory right to an allowance." D.C.S.D.N.Y., 33 F. Supp. 171. From this order of the court, the debtor appeals, by way of notice of appeal, rather than petition for its allowance, under our ruling in Re Haytian Corp., 2 Cir., 112 F.2d 146, that such action falls under § 24, not § 250, of the Bankruptcy Act, 11 U.S.C.A. §§ 47, 650.

Had these proceedings occurred after the Supreme Court had clarified the procedure and explained the limitations of Chapter XI proceedings in Securities & Exchange Commission v. United States Realty· & Improvement Co., 310 U.S. 434, 60 S.Ct. 1044, 84 L.Ed. 1293, it seems clear that this company in all probability would have been reorganized under Chapter X, 11 U.S.C.A. § 501 et seq., not "arranged" as here, and that these various committees would have been spared the disappointment which is now theirs. For this was essentially a reorganization of a great business enterprise; the debtor, as a holding company operating through subsidiaries, conducted what was said to be the largest business in the Republic of Haiti—producing sugar and by-products, such as rum, molasses, and alcohol. A bond issue of three million

dollars was coming due on December 31, 1938; and since the company could not pay the principal or the accrued interest of $2,222,000, some form of reorganized capital structure was necessary. The proceedings herein developed a struggle between the management, supported by the unofficial Hanson and Wales Committees and then by the Creditors' Committee, to refund the bonds through issue of preferred and common stock, thus preserving its control of the business, and the bondholders—represented, though by no means exclusively, by the Prince Committee—to preserve their priority. The ultimate plan was a compromise between the two parties whereby the bondholders received in part secured bonds and in part income debenture bonds with voting rights, together with about 53 per cent of· the distributed common stock. For the adjustment of such conflicting interests, the activities of several committees might well be helpful in a reorganization under Chapter X. But the simple arrangement procedure, still basically the old offer of composition by a debtor to his creditors, is hardly an appropriate vehicle for such adjustments.

Of these difficulties, however, the parties were apprised. Counsel for the Prince Committee says he repeatedly urged the referee to hold these proceedings inappropriate. But, so far as the record shows, he employed this suggestion as a club to expedite action, rather than as an asserted defense in bar. At any rate, every one consented to the order of confirmation and no one has appealed from it. Moreover, as counsel's time sheets attached to his claim show, much time was spent in study of the two important decisions below discussed hereinafter, In re Max Fishman, Inc., D.C.S.D.N.Y., 27 F.Supp. 33, and In re Fisher Dress Corp., D.C.S.D.N.Y., 33 F. Supp. 157; as counsel say frankly, the "firm engagement" of Paragraph XI was prepared in the light of those cases and with the purpose of avoiding the result of the first one.[1] Indeed, appellees urge us to

---

[1] The problem was one often adverted to by text-writers; one writer said, in referring to the situation where a large corporation proceeded to reorganize under Chapter XI, not under Chapter X, that, inter alia, "creditors must wriggle and squirm in order to be able to pay their accountants and their lawyers under the Fisher case as opposed to the Fishman case, with other far-reaching and obviously unintended consequences." Jack-

son, The Need for Amendment of the Chandler Act, A3 Corp. Reorg. 35, at 40; cf. Gerdes, Recent Developments in Corporate Reorganizations under the Bankruptcy Act, 26 Va.L.Rev. 999, 1019; Montgomery, The Chandler Act Again: Two Criticisms, 25 Va.L.Rev. 881, 884; Rostow and Cutler, Competing Systems of Corporate Reorganization, 48 Yale L. J. 1334, 1343.

view their claims more favorably than otherwise because they were under Chapter XI, in circumstances which will probably not recur. But, however much we may sympathize with them in a situation which seems to have developed because of the law's uncertainties, clearly we must treat the proceeding as legally under Chapter XI, and controlled by the provisions of that chapter.

■■ Turning first to the effect of the "firm engagement," we do not think that a debtor in Chapter XI proceedings may bind itself in its plan of arrangement to make payments in consideration of the services of creditors' committees other than the official committee chosen at the first meeting of creditors. That such allowances are not payable merely as expenses of administration is entirely clear from the Bankruptcy Act itself. By § 338, it is provided that at the first meeting creditors "may appoint a committee, if none has previously been appointed under this Act [title]," and by § 337(2), that the court shall fix a time when the debtor shall deposit "the actual and necessary expenses incurred in connection with the proceedings and the arrangement by the committee of creditors and the attorneys or agents of such committee." These references are to a single committee. It is well settled that the bankruptcy court lacks power to grant, and the policy of the Act is against, compensation not expressly provided for by the Act. In re Realty Associates Securities Corp., 2 Cir., 69 F.2d 41, certiorari denied 292 U.S. 628, 54 S.Ct. 631, 78 L.Ed. 1482; In re First Bond & Mortgage Co., 5 Cir., 74 F.2d 930; cf. In re General Carpet Corp., 3 Cir., 116 F.2d 426, December 13, 1940. The expression of this policy to limit allowances here to merely the expenses of a single committee becomes even clearer by a contrast of the allowance section of Chapter XI, cited above, with the provisions of § 77, sub. c(8), 11 U.S.C.A. § 205, sub. c(8); of Chapter X—§§ 242–249, 216(3), 11 U.S.C.A. §§ 642–649, 616(3); of Chapter XII—§§ 492(1), 461(8), 437(2), 11 U.S.C.A. §§ 892(1), 861 (8), 837(2); and of former § 77B, sub. c (9), 11 U.S.C.A. § 207, sub. c(9), in which allowances to more than one committee are clearly permitted.

Such considerations as these have brought about a refusal of allowances to attorneys for creditors in ordinary bankruptcy (In re Eureka Upholstering Co., 2 Cir., 48 F.2d 95), to creditors' committees in proceedings for composition both under former § 12, 11 U.S.C.A. § 30 (In re Realty Associates Securities Corp., supra), and former § 74, 11 U.S.C.A. § 202 (In re Faour, 2 Cir., 78 F.2d 1015, affirming D.C. S.D.N.Y., 11 F.Supp. 462), as well as to unofficial committees under Chapter XI itself (In re Max Fishman, Inc., supra).

■ Appellees contend, however, that the allowances covered by Paragraph XI are payable as ordinary contract claims, under § 357(6), 11 U.S.C.A. § 757(6), which specifies as a permissible part of an arrangement "provisions for payment of debts incurred after the filing of the petition and during the pendency of the arrangement, in priority over the debts affected by such arrangement." The referee held against them on the ground that none had complied with the prescribed procedure for submitting proof of claim, such as was had in Re Fisher Dress Corp., supra, and would have entitled them to recognition under § 357(6). We view that as merely a formal objection, for the time limit of § 57, sub. n, 11 U.S.C.A. § 93, sub. n, could not be supposed to apply to debts payable under § 357(6), which may not have been incurred within six months of the first meeting of creditors. The more substantial objection, we think, is that a promise to compensate an unofficial committee of creditors and its attorney or agents is not the kind of "debt" contemplated by § 357(6). The purpose of that subsection is apparently to make possible the uninterrupted operation of a business in the course of a Chapter XI proceeding, by permitting priority to be accorded to operating expenses. This interpretation of § 357(6) is borne out by the distinction made in § 337(2) between "debts which have priority," the "costs and expenses of the proceedings," and the "expenses incurred in connection with the proceedings and the arrangement by the committee of creditors." Clearly, the obligations sought to be imposed here would fall into the third category. Far from being operating expenses of the debtor, they were—or should have been—services in the interests of the creditors and by them requested. Under former § 12, which also required a deposit against "debts which have priority" and "the cost of the proceedings," a provision in a composition plan for an allowance to a bondholders' committee was held invalid because not of the nature of such a debt or such costs. In re Realty Associates Se-

curities Corp., supra. See also In re Manhattan Music Hall, D.C.S.D.N.Y., 14 F. Supp. 48, 53, and compare the remarks of L. Hand, J., in Re Siegel, D.C.S.D.N.Y., 252 F. 197; though the case was reversed in 2 Cir., 256 F. 226, because the composition offer had been confirmed without question, the reasoning was approved in the Realty Associates case.

■ Moreover, the promise was supported by no consideration except the mutual agreement of the creditors to accept the plan, and it assumes, for the benefit of certain of the creditors and in a way not recognized by the Act, an obligation otherwise theirs. Hence it constitutes a preference to the creditors thus advantaged, and violates the principle of parity of treatment required by § 366(3), 11 U.S.C.A. § 766(3), as well as the general bias against preferences read into the Act even without such express justification. That a provision for allowances to creditors' committees is a voidable preference in composition proceedings, see In re Realty Associates Securities Corp., supra; In re M. & H. Gordon, D.C.S.D.N.Y., 245 F. 905; In re Siegel, supra; also In re Middle West Utilities Co., D.C.N.D. Ill., 17 F.Supp. 359, 371, 374. In re Dornbush, D.C.E.D. N.Y., 3 F.Supp. 935, which relied on In re Hollis Lumber Co., 2 Cir., 55 F.2d 898, cannot be considered law, in view of the explanation of the Hollis case made in the Realty Associates case.

This conclusion disposes of the case so far as the Prince and Boehm petitions are concerned, since they rely only on the contract of Paragraph XI of the Second Modified Arrangement; the order of the court, in so far as it relates to them, must be reversed, and their petitions dismissed. Any criticism they direct at the conditional nature of the referee's confirmation of the Second Modified Arrangement, with its reservation of the question of allowances for later disposition, is irrelevant here, since no appeal was taken from that order.

■ The Creditors' Committee, in seeking to justify its application, however, relies alternatively on the express provision quoted above from § 337(2) providing for payment of the "actual and necessary expenses" of the Creditors' Committee and its attorneys or agents. It points out that, by resolution adopted immediately after its selection, it engaged the members of the Hanson and Wales Committees "as its agents" to continue negotiations with the debtor, to agree upon a final plan with the debtor, and to solicit assents to the plan when agreed upon. And it argues that fees to these unofficial committees were its own necessary and actual expenses, and that fees and other moneys paid by such committees were their expenses in connection with the proceedings.

In form, therefore, the Committee's petition falls within the literal terms of the statute just quoted. In actual substance, however, it does amount to a grant of allowances to informal committees acting to assist the debtor in formulating the plan which he is required to present as the very basis of the proceedings for an arrangement. §§ 321-323, 363, 11 U.S.C.A. §§ 721-723, 763. The Hanson Committee began activities in 1936. Hanson himself had participated in the original flotation of the bonds in question and was anxious to avoid their default. The Wales Committee, too, was active before the appointment of the Creditors' Committee on December 5, 1938. Of the four members of the Creditors' Committee, half were nominees of each committee. Moreover, although these members of the Creditors' Committee did not claim compensation in that capacity, yet an allowance is claimed for each one as part of the expenses of the informal committees—Lane as secretary, and Richmond as solicitor, of the Hanson Committee, and Goddard and Thomas as solicitors for the Wales Committee—to a total of $2,590.

■ We think that the claims in this form are unauthorized in law. Though Chapter XI does amplify the former composition proceedings, nevertheless it still proceeds as an offer by a debtor of a plan for the adjustment of his debts, and it can proceed in no other way. To aid the creditors in considering the offer, a single creditors' committee may be appointed to advise, without compensation. The functions and obligations of the committee are well stated by Judge Chesnut in a thoughtful opinion in Re Credit Service, D.C.Md., 31 F.Supp. 979. As he points out, the committee corresponds to the committee authorized by § 44, sub. b, in ordinary bankruptcy, 11 U.S.C.A. § 72, sub. b, and under this statute, § 338, can be appointed only where "none has previously been appointed," i. e., under § 44, sub. b. See also Arrow Dairy Co., Inc. v. Chase Superior, Inc., 2 Cir., 116 F.2d 573, January 6, 1941. By § 44, sub. b,

the function of the committee as representing creditors, not the debtor, is made clear; it "may consult and advise with the trustee in connection with the administration of the estate, make recommendations to the trustee in the performance of his duties, and submit to the court any question affecting the administration of the estate." Judge Chesnut therefore approved the ruling of the referee that votes obtained for the management or the interests of the bankrupt should be rejected and a different committee appointed, saying: "It is fairly obvious that no arrangement proposed by or in the interests of the management alone is likely to receive the approval of disinterested creditors unless and until they are thoroughly satisfied that what is offered to them in exchange for their present claims is fair and equitable and in their interests. Under Chapter XI the creditors' committee seems to be the only effective agency which can act for the creditors in this respect." [Page 982 of 31 F.Supp.] Compare also Montgomery, The Chandler Act Again: Two Criticisms, 25 Va.L.Rev. 881, 884, that the most important function of the creditors' committee is "to examine the plan and its proponent, and prepare a report advising creditors whether or not the plan should be accepted or rejected." Acting on the same principle, Judge Patterson in Re Max Fishman, Inc., supra, rejected expenses incurred before the committee's appointment.

We think, therefore, that the allowable expenses of the Committee must be limited to those incurred by it in passing judgment upon the plan and in making that judgment known to the debtor and the creditors for appropriate action by him or them. Such expenses certainly cannot include any form of compensation to Committee members themselves, whether as agents or solicitors of agents or otherwise. Further, no allowance should be made to any agents so far as they either perform tasks within the compass of the Committee's own duty or act for the debtor, as in the active solicitation of assents to the proffered plan. And notwithstanding argument to the contrary (see Montgomery, supra), we think expenses incurred prior to the Committee's appointment are not allowable, since they are designed to facilitate advance acceptance of the plan, rather than to aid impartial judgment upon it. Their impropriety is shown here. The Creditors' Committee, in accepting the work of the informal committees, adopted the point of view of the management; but after active and expensive solicitation of assents, both at home and abroad, the debtor's plan had to be substantially rewritten in the interests of the general creditors.

Within the limits here indicated, a creditors' committee is entitled to reimbursement for its reasonable expenses. In a particular case it may not always be easy to differentiate between expenses properly incurred by a committee in representing and advising the creditors as to the debtor's offer and those incurred in merely promoting the debtor's plan or by delegating its functions to others. The general principle, however, seems clear; its application must turn on decisions of fact in a particular case.

Since we think that the informal committees cannot receive compensation or reimbursement for expenses in acting either for the debtor or for the Committee in passing upon and supporting any of the plans offered, it may well be that no further allowance is due the Committee. It may have needed legal advice, but its counsel has already received a generous fee to which no objection has been made. Nevertheless the petition as presented did not differentiate among the expenses claimed according to the principle we have stated; nor is it certain that the referee's adverse decision was based upon that principle. It seems fair, therefore, that the matter should be referred back to the referee for such action as he shall think just and proper in the light of this opinion.

Order as to petition of Erle R. Lane et al. modified, for remand to the referee for further proceedings not inconsistent with this opinion; order as to the petitions of Theodore Prince et al. and of Louis Boehm reversed for dismissal of the petitions. No costs will be taxed on this appeal.