### In re STAR BRAND PRODUCTS & PICKLE CO., Inc.

United States District Court
S. D. New York.
Feb. 20, 1951.

A. Alan Reich, New York City, for Unofficial Creditors Committee, and appearing *pro se* (Irving L. Golomb, New York City).

Gerdes & Montgomery, New York City, for N. Y. Credit Men's Adjustment Bureau, Inc.

COXE, District Judge.

These are petitions by an unofficial creditors' committee of the debtor and its secretary and counsel to review an order of a bankruptcy referee, dated December 18, 1950. The order enjoined the carrying out of an agreement between the committee and one Isaac Merrin, under which Merrin, a creditor of the debtor and the father-in-law of one of its officers, had agreed to furnish to the committee the sum of $500 for reimbursement of its expenses and disbursements, including the services of its secretary and counsel.

On July 26, 1950, about two weeks prior to the filing by the debtor of its petition for an arrangement under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq., a meeting of the creditors of the debtor was held, upon notice to all the

creditors. Those present at the meeting appointed an informal, or unofficial, committee to represent them in connection with the debtor's affairs. This unofficial committee employed the New York Credit Men's Adjustment Bureau, Inc., as its secretary, and A. Alan Reich as its counsel, upon the understanding that they should receive the sum of $500 for their services and expenses.

On August 10, 1950 the debtor filed its arrangement petition, and on August 17, 1950 the referee held a meeting of the ten largest creditors of the debtor pursuant to Rule XI–6 of the local Bankruptcy Rules, at which the debtor was continued in possession. The referee was at that time informed of the names of the members, secretary and counsel of the committee, and the meeting was adjourned, because of doubt as to whether the debtor's plan of arrangement would be acceptable, to September 18, 1950, and again to October 8.

■ Although Section 334 of Chapter XI requires that the court "shall promptly call a meeting of creditors", such a meeting was not called until October 23, so that, during this interval of over two months, the unofficial committee was the only representative of the creditors to negotiate with the debtor and to provide the only effective check on the debtor's operations. At this meeting an amended plan of arrangement was presented, improving the original offer, and it may be fairly inferred that this improvement was largely due to the efforts of the committee. It appears, also, that at the meeting the members of the committee, with the addition of one other, were appointed the official committee. The meeting was adjourned to December 15, at which the affidavit required by General Order 41, 11 U.S.C.A. following section 53, was filed and the amended plan was confirmed.

In this affidavit, the president of the debtor stated that he had no knowledge of any promise or payment by the debtor, or any other party, of compensation to any attorney or other person in connection with the proceeding, except that Merrin had agreed to pay to the unofficial committee the sum of $500 as reimbursement of its expenses.

Neither the official committee nor the unofficial committee has filed an application for an allowance.

The referee held that he could not permit this method of fixing compensation, and that the proposed payment by Merrin was an attempted evasion of the Act and the General Orders. He also stated that, while the Merrin agreement was not enough to justify him in disapproving the amended plan, he would confirm it only upon condition that the Order under review be entered.

It is the contention of the petitioners that the referee had no power to interfere with an agreement between an unofficial committee and a third party for reimbursement of the expenses of the committee.

■ In a proceeding under Chapter XI, only the official committee appointed under Section 338 is entitled, under Section 337 (2), to an allowance for its expenses from the debtor's estate, to be fixed by the court. Lane v. Haytian Corp. of America, 2 Cir., 117 F.2d 216.

■ In Leiman v. Guttman, 336 U.S. 1, 69 S.Ct. 371, 93 L.Ed. 453, a Chapter X case, relied upon by the referee, it was held that the control of the bankruptcy court over fees and allowances is not limited to those payable out of the debtor's estate, but extends to all payments for services rendered in connection with the reorganization proceeding, by whomever paid. This was placed upon the ground that Section 221(4) of Chapter X, 11 U.S.C.A. § 621 (4), requires that, before a plan may be confirmed, the judge must be satisfied that "all payments made or promised by the debtor * * * or by any other person, for services and for costs and expenses in, or in connection with, the proceeding or in connection with the plan * * * have been fully disclosed to the judge and are reasonable". There is no provision in Chapter XI similar to Section 221(4) in Chapter X. Section 366 states the requisites for confirmation of an arrangement, but has nothing at all comparable to the quoted language of Section 221(4). It can hardly be said that the referee, in a

409

Chapter XI proceeding, has power to pass upon an agreement relating to the payment of the expenses of an unofficial committee, where such expenses are not to be paid out of the debtor's estate.

Nor does General Order 41 support the order of the referee under review, for it merely requires full disclosure of all matters required by the Order itself. It does not purport to authorize the referee to pass on the validity of such an agreement as the Merrin agreement. Apparently the purpose of General Order 41 is to empower the referee to determine whether the existence of any such agreement justifies him in refusing to confirm a plan because it is not for the best interests of the creditors or is not fair, equitable and feasible. Here, full disclosure was made, and the referee stated unequivocally that he did not deem the Merrin agreement sufficient to warrant his denying approval of the amended plan.

The petitions to review are sustained, and the injunction order of December 18, 1950 is reversed.