## In re HANDY–ANDY COMMUNITY STORES, Inc.

## ALLEN et al. v. HANDY–ANDY COMMUNITY STORES, Inc.

### No. 3800.

District Court, W. D. Louisiana, Shreveport Division.

June 22, 1932.

T. Overton Brooks and Wm. H. Cook, both of Shreveport, La., for creditors.

W. M. Phillips and C. F. Currier, both of Shreveport, La., for defendant.

DAWKINS, District Judge.

This matter comes before the court on a certificate of review from the ruling of the referee, in a controversy between certain individuals, to wit, W. A. Wilcox and J. D. Taylor, as ordinary creditors of the bankrupt, and the First National Bank of Shreveport, La., as to which shall receive the dividend to be paid upon the former's claims.

Wilcox and Taylor filed their proofs of debt timely, as did the bank, as creditors of the bankrupt estate. The latter asserted a privilege of security arising from a chattel mortgage upon the fixtures of the bankrupt, but this was ultimately disallowed. The present contention of the bank is that, at the time of the execution of the chattel mortgage, these individuals, Wilcox and Taylor, were officers and stockholders of the Handy-Andy Community Stores, Inc., and, as a part of the consideration for the loan to secure which

the chattel mortgage was given, executed an instrument in favor of the bank, in words and figures as follows, to wit:

"Shreveport, Louisiana.
"February 20, 1929.

"Mr. R. B. McPherson,
"Shreveport, Louisiana.

"Dear Sir: You have this day purchased from the Handy-Andy Community Stores of Louisiana, Inc., a note for $15,000.00, repayable in monthly instalments of $500.00 each and due six months after date, which is secured by a chattel mortgage covering all of the furniture, fixtures and equipment of the corporation in its six stores in Shreveport, Bossier City and Plain Dealing, Louisiana. We are the principal stockholders and managing officers of the corporation. The corporation owes us $20,000.00, and one of the considerations for your purchasing this note was our agreement with you that we, as individual creditors of said corporation, should agree to subordinate our claim for said $20,-000.00 to yours for $15,000.00 in respect of all assets of the corporation of whatsoever nature and kind, including as well those covered as those not covered by the mortgage which secures your note, and that in the event of insolvency or liquidation, your note aforesaid shall be paid as between you and us by preference and priority, over our claim. It was further agreed that, in the event of bankruptcy, we will file our claim for the above amount, and that any amounts paid to us in liquidation of said claim shall, so far as may be necessary, be applied upon the note this day purchased by you, and we agree to make proper assignment thereof, should the same become necessary.

"We write you this letter for the purpose of verifying our verbal agreement, and if the above is in accordance with your understanding thereof, please indicate the same by signing your name on the space provided therefor below.

"[Signed]   W. A. Wilcox,
"J. B. Taylor.

"Accepted: February 21, 1929.
"R. B. McPherson."

McPherson was a vice president or assistant vice president of the bank, and was made the mortgagee in the chattel mortgage for its benefit. Hence this document was addressed to him.

In a petition filed with the referee after the final decision upon the chattel mortgage claim, the bank alleged that Wilcox and Taylor were creditors of the bank whose proven claims were for $10,000 each, or a total of $20,000, and that by virtue of the above-quoted instrument it was entitled to be paid any dividends coming to these individuals. Wilcox and Taylor opposed it upon the grounds that the quoted letter was not an assignment nor could it be sustained as a subrogation. Further, both allege that, after the filing of their claims, contracts had been made with attorneys to represent them in collecting the dividends upon the basis of a fee of 50 per cent. of what was recovered.

The referee concluded, first, that the document above quoted was not in fact an assignment, but a promise to assign; and, secondly, that, if it should be held as an assignment, the title to the claims passed to the bank in February, 1929, and it had not filed proof thereof before this court within the time allowed by the statute.

■ A court of bankruptcy, of course, is a court of equity, with all the necessary powers to ascertain and determine the rights of persons in and upon the property and assets surrendered by the bankrupt. Possessing the powers of an equity court, I think it may apply all of the usual principles necessary to afford any relief that might be had if the matter were before a federal court on its equity side.

■ The situation presented here is simply that the bank is attempting to compel these individuals to carry out a valid agreement, made at a time when the company of which they were stockholders and officers, was in need of financial assistance, and which was given for a valid consideration for the money loaned to the bankrupt. It was clearly provided that, in event of bankruptcy, any sums due these individuals as creditors of the Handy-Andy Community Stores, if necessary, should be paid to the bank. While the document does not convey a present title to the claimants, it amounts to an agreement to do so, in so far as relief in a court of equity is concerned, which becomes enforceable when the necessary conditions arise requiring it. For this reason, the legal title to the claims standing in the names of Wilcox and Taylor, it was entirely proper for them to prove the same before the referee. The bank is not now asserting any claim against the bankrupt estate as such, but merely asking the court to exercise its equity powers to compel these individuals to carry out their agreement, which I think it may do at any time before the fund in controversy has passed out of its hands. C. J. vol. 21, verbo, "Bankrupt-

ey," § 23; In re Siegel-Hillman Dry Goods Co. (D. C.) 111 F. 980, 986; In re Swofford Bros. Dry Goods Co. (D. C.) 180 F. 549; Sessler v. Nemcof (D. C.) 183 F. 656; Bardes v. Hawarden Bank, 178 U. S. 524, 20 S. Ct. 1000, 44 L. Ed. 1175; In re McCarthy Portable Elevator Co. (D. C.) 205 F. 986.

■ It is a well-known principle that equity regards that as done which ought to be done, and, the agreement in this case being beyond question, it seems to me the court has no alternative but to enforce it. C. J. vol. 21, verbo, "Equity," § 190.

I do not consider that there is any question of subrogation involved, but simply the interpretation and enforcement of a valid contract which a court of equity under the circumstances revealed here is bound to respect. All parties are before the court, the matter has been heard, and, while there is some contention that the nature of the claims of Wilcox and Taylor against the bankrupt was not shown before the referee, I think this immaterial, for it is not disputed that they were creditors of the bankrupt in the ordinary class, just as the bank has been held to be, and it should make no difference now what the basis of those claims may have been. The amounts set forth in the letter above quoted and in the proofs of claims filed are $10,000 each, or a total of $20,000.

■ With reference to the contention that the attorneys in this case should receive 50 per cent. of these dividends as fees, by preference over the bank, it is sufficient to say that, although no evidence was taken to show knowledge on the part of the attorneys of this particular controversy, the promise to pay one-half of what was recovered is strongly persuasive of the idea that Wilcox and Taylor knew that the bank was going to assert its claim and the attorneys were employed for the purpose of defeating it. However, I do not think it matters whether the attorneys knew of the contention of the bank or not, as those claims were not negotiable instruments. There was no controversy with the estate requiring legal assistance to have them recognized. My view is that under the circumstances Wilcox and Taylor could convey to the attorneys no greater interest than they themselves owned.

The decision of the referee will therefore be reversed, and the bank allowed to recover and receive any dividends which are or may become payable to Wilcox and Taylor. Proper decree should be presented.