## PEOPLES–TICONIC NAT. BANK et al. v. STEWART.

### No. 3155.

Circuit Court of Appeals, First Circuit.
Nov. 20, 1936.

Harold Dubord, of Waterville, Me., for appellants.

Harvey D. Eaton, of Waterville, Me., for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

WILSON, Circuit Judge.

This is an appeal from the decree of the District Court of Maine in a bill in equity to compel the bank to apply in dis-

charge of a mortgage held by it as executor of the will of the late J. Colby Blaisdell, certain funds received by it for the purpose and deposited in the bank to the credit of the plaintiff in her checking account.

In 1902 W. Parker Stewart of Waterville, Me., borrowed $4,000 of J. Colby Blaisdell and gave him a deed of certain real estate as security for the loan, taking back a bond for a deed, which in Maine constitutes a mortgage. In 1910 W. Parker Stewart conveyed his equity in the property to his wife, who is the plaintiff in the equity suit.

In 1931 J. Colby Blaisdell died, and the defendant bank under the name of Peoples National Bank was appointed executor of his will. Payments have been made from time to time on the debt during the lifetime of Mr. Blaisdell and to the bank as executor since his death, until there was the sum of $1,300 due on the principal.

In December, 1932, Mr. Stewart, acting for his wife, went to the bank and informed the officials of the bank that on January 3, 1933, his wife would take up the mortgage. On that day he appeared with and tendered a certified check drawn on the Federal Trust Company located in Waterville for $1,313, the amount due on the mortgage plus interest to the date of tender. No objection was made as to the form of the tender or the amount.

The bank refused to accept payment before consulting its attorney, who was out of town, and they questioned the form of the discharge they were to give. It was understood that Mr. Stewart would return on January 6, when he would be informed what was necessary for a discharge of the mortgage.

The certified check not being received by the bank as executor, Mr. Stewart deposited it with several other small items on Mrs. Stewart's checking account. The purpose for which the deposit of the certified check for $1,313 was made, and it was received by the bank with that understanding, was that it was to be applied in discharge of the mortgage as soon as the proper papers could be executed. It was so found by the District Judge, and that it was not received in the usual course of banking, resulting in the relation of debtor and creditor.

The Supreme Court said in Commercial Nat. Bank of Pennsylvania v. Armstrong, 148 U.S. 50, 59, 13 S.Ct. 533, 535, 37 L.Ed. 363:

"All deposits made with bankers may be divided into two classes, namely, those in which the bank becomes bailee of the depositor, the title to the thing deposited remaining with the latter; and that other kind of deposit of money peculiar to banking business, in which the depositor, for his own convenience, parts with the title to his money, and loans it to the banker, and the latter, in consideration of the loan of the money, and the right to use it for his own profit, agrees to refund the same amount, or any part thereof, on demand."

And again in Northern Sugar Corporation v. Thompson (C.C.A.) 13 F.(2d) 829, 831:

"Whether a deposit in the bank is general or special depends upon the contract resulting from the mutual understanding and intention of the parties at the time such deposit is made. Fogg v. Tyler, 109 Me. 109, 82 A. 1008, 39 L.R.A.(N.S.) 847, Ann.Cas.1913E, 41."

It was perfectly clear from the circumstances under which Stewart deposited the certified check that he, as agent for his wife, had no intention of parting with the full title to the money and loaning it to the bank for its use as it saw fit; but it was the intention of both parties that it was to be held by the bank pending the settlement as to the form of a discharge of the mortgage.

On Mr. Stewart's return on January 6, he presented a check drawn on Mrs. Stewart's account for the sum due on the mortgage, but was informed that counsel for the bank had instructed the officers of the bank that a license to give a deed must be obtained from the probate court before it could discharge the mortgage, since the mortgage was in the form of a deed from Stewart to Blaisdell and Stewart had only a bond for a deed.

Mr. Stewart continued to go to the bank for the discharge. On February 27, 1933, a license was obtained by the bank as executor to give a deed in discharge of the mortgage; but the bank failed to execute the deed before it was closed under the general order of March 6, 1933, and although it was executed by the bank as executor on March 9, it was never delivered.

Stewart during these negotiations was dealing with the bank in its capacity as

executor of the will of J. Colby Blaisdell, and while he deposited the certified check in the bank on Mrs. Stewart's checking account, the officials of the bank understood the transaction and that the funds so deposited were deposited pending the giving of, and to be applied in a discharge of, the mortgage and for no other purpose. Mrs. Stewart then brought this bill in equity to compel the receiver of the bank to apply the funds deposited by Mr. Stewart in discharge of the mortgage, and the bank as executor to discharge the mortgage.

A receiver of a national bank takes title to the assets subject to all existing rights and equities.

"The receiver takes the assets of the bank as a mere trustee for creditors, and not for value and without notice, and, in the absence of statutes to the contrary, subject to all claims and defenses that might have been interposed as against the insolvent corporation before the liens of the United States and of general creditors attached. Scott v. Armstrong, 146 U.S. 499, 507, 13. S.Ct. 148, 36 L.Ed. 1059. And he takes no greater rights in the property than the insolvent bank itself possessed. Fourth Street National Bank v. Yardley, 165 U.S. 634, 643, 17 S.Ct. 439, 41 L.Ed. 855; Lyons v. Westwater (C.C.) 173 F. 111; Auten v. City Electric R. R. Co. (C.C.) 104 F. [395] 400." Williams v. Green (C.C.A.) 23 F.(2d) 796, 798.

The receiver in taking over the assets of the bank found a credit to the account of Mrs. Stewart, and naturally assumed that it represented the usual case of debtor and creditor; but from the evidence in this case it appears that it was received as part of the transaction between Mrs. Stewart and the bank as executor, and was to be applied in redemption of a mortgage held by the bank as executor.

"It is only by looking at the intent, rather than at the form, that equity is able to treat that as done which in good conscience ought to be done. * * * Equity always attempts to get at the substance of things and to ascertain, uphold and enforce rights and duties which spring from the real relations of the parties. It will never suffer the mere appearance and external form to conceal the true purposes, objects and consequences of a transaction." Pomeroy's Equity Jurisprudence (4th Ed.) par. 378.

The plaintiff encountered no difficulty in tracing these funds into the particular deposit. It is perfectly obvious that they were deposited with the bank solely for the purpose of discharging the mortgage, and the bank received them for that purpose.

There was no intention that both the legal title to these funds and the beneficial title should both pass to the bank, and that it could use these funds as it saw fit, as in case of a general deposit. It was clearly the intent of both the bank and the Stewarts that while the possession, or legal title, passed to the bank, the beneficial title or right to use of the funds remained in Mrs. Stewart to be applied in discharge of her mortgage. The bank received the funds with this understanding. A trust arises under such circumstances.

"In all species of resulting trusts, *intention* is an essential element, although that intention is never expressed by any words of direct creation. There must be a transfer, and equity infers the intention that the transferee was not to receive and hold the legal title as the beneficial owner, but that a trust was to arise in favor of the party whom equity would regard as the beneficial owner under the circumstances. The equitable theory of *consideration*, heretofore explained, is the source and underlying principle of the entire class. Resulting trusts, therefore, are those which arise where the legal estate in property is disposed of, conveyed, or transferred, but the intent appears or is inferred from the terms of the disposition, or from the accompanying facts and circumstances, that the beneficial interest is not to go or be enjoyed with the legal title. In such case a trust is implied or results in favor of the person for whom the equitable interest is assumed to have been intended, and whom equity deems to be the real owner. This person is the one from whom the consideration actually comes, or who represents or is identified in right with the consideration; the resulting. trust follows or goes with the real consideration." Pomeroy's Equity Jurisprudence (4th Ed.) § 1031.

The decree of the District Court is affirmed, with costs.