In the matter of **DODGE–FREEDMAN POULTRY COMPANY**, Debtor.

No. 5465.

United States District Court
D. New Hampshire.

Dec. 4, 1956.

**648**

debtor in this proceeding, seeks to have set aside a dividend allowed one of the creditors.

On January 31, 1955, Dodge-Freedman Poultry Company, sometimes hereinafter referred to as Debtor, filed a petition for an arrangement under Chapter XI of the Act of Congress relating to Bankruptcy. Title 11 U.S.C.A. §§ 701–799. A *Plan of Arrangement* was subsequently adopted which provided that a total dividend of fifteen percent be paid to unsecured creditors as full satisfaction for their claims. Among the general creditors to file a proof of claim, together with a duly executed *Acceptance of the Agreement,* was Ann Freedman, a/k/a Annette Freedman, who, on April 15, 1955, set her claim at $51,000. On December 15, 1955, some time after the "acceptance" of the plan but before its "confirmation," she filed an affidavit under General Order 41 of the Bankruptcy Act, waiving any and all rights to share in the deposit made by the debtor to cover its obligations and to share in any dividend under the plan. She is the wife of Harry Freedman, who was and still is the president, clerk, director, and principal stockholder in the debtor corporation. For purposes of this proceeding, it has been agreed to consider the claim filed and waived by her as being a claim of Harry, and the amount of the debt has been reduced to $50,000. Since a dividend of fifteen percent was declared, this would have entitled Harry Freedman to receive a dividend of $7,500 had the claim not been waived.

Another unsecured creditor which accepted the *Plan of Arrangement* was Delaware Mills, Inc., sometimes hereinafter referred to as Delaware, a corporation duly chartered under the laws of the State of New York, which filed a proof of claim totaling $42,594.63 on April 25, 1955. This claim was allowed and a dividend of fifteen percent or $6,389.19 paid, leaving a balance of $36,205.44. On this unpaid balance, Delaware Mills, Inc. filed another proof of claim, asserting its right to an additional dividend of $7,500 by virtue of a

Wyman, Starr, Booth, Wadleigh & Langdell, Robert P. Booth, Manchester, N. H., for Delaware Mills, Inc.

J. Morton Rosenblum, Manchester, N. H., Widett & Kruger, Joseph Kruger, Boston, Mass., for debtor in possession.

CONNOR, District Judge.

This is a petition for review of an order entered May 25, 1956, by the Referee in Bankruptcy. The petitioner, Dodge-Freedman Poultry Company, the

subordination agreement duly executed on May 11, 1954, between itself and Harry Freedman.[1]

The debtor objected to allowance of this second dividend. It contended that the agreement was nothing more than a subordination contract which gave Delaware Mills, Inc. no property interest in the debt owed by Dodge-Freedman Poultry Company to Harry Freedman, at least not until such debt was actually paid to him. It contended that by its very language the contract was not an assignment or a subrogation agreement. Delaware, on the other hand, asserted that no matter what the contract originally may have been, the intervention of bankruptcy, in effect, caused it to become an equitable assignment. To support this argument, Delaware relied upon Bird & Sons Sales Corporation v. Tobin, 8 Cir., 1935, 78 F.2d 371, 100 A.L.R. 654. In that case, a group of creditors signed an agreement subordinating payment of the debtor's then existing indebtedness to them to the prior payment and satisfaction of all future indebtedness. Later the debtor went into bankruptcy, after incurring indebtedness to the other creditors, and the signers, despite their agreement, filed proofs of claim and demanded a dividend of the same percentage due the subsequent creditors. They argued that Section 65, sub. a of the Bankruptcy Act, 11 U.S.C.A. § 105, sub. a made all such contractual agreements null and void since it requires equal distribution of assets to all creditors.[2] The Court of Appeals for the Eighth Circuit rejected this contention and held that there is nothing in the Bankruptcy Act nullifying otherwise valid prior agreements between creditors. On the strength of this opinion, Delaware Mills, Inc. suggested that the equity power of a Bankruptcy Court automatically converts a subordination agreement into an equitable assignment upon the filing of the petition in bankruptcy.

This reasoning violates the basic principle that intervention of bankruptcy does not change the existing rights of the various parties, and the Referee did not give it serious consideration. He did, however, refuse to give "judicial sanction to an unconscionable, unjust, inequitable and deliberate act of avoidance," ruling that Freedman was estopped from voluntarily waiving the dividend due under the *Plan of Arrangement*. He found that the subordination agreement is and always was an equitable assignment of his claim by Freedman to Delaware Mills, Inc. Invoking the equity powers of the Bankruptcy Court, he ordered that Debtor deposit $7,500 as an additional dividend for Delaware Mills, Inc.

In asking this court to overrule the referee's order, Debtor does not question the soundness of the Bird case, admitting that it is a well-settled practice in bankruptcy for courts to enforce agreements between creditors which provide for subordination in liquidation. See 3 Collier on Bankruptcy (14th Ed.) page 2294 (Section 65.06) and cases cited therein.

---

1. The subordination agreement provides as follows: "For and in consideration of the extension of credit by Delaware' Mills, Inc. of Deposit, New York to the Dodge-Freedman Poultry Company of Concord, New Hampshire, I, the undersigned an officer and shareholder of the Dodge-Freedman Poultry Company do hereby subordinate all of my claims against the Poultry Company as reflected on their books in the amount of $50,-000 to the account of Delaware Mills, Inc. and that no drawings of any kind as a reduction of the amounts due me from Dodge-Freedman Poultry Company will be made until all amounts due from them by Delaware Mills, Inc. have been satisfied and paid.

"Dated at Concord New Hampshire , this 11th day of May, 1954. Witness my hand and seal.

"s/ Harry Freedman, Pres. "Officer and Shareholder of Dodge-Freedman Poultry Company"

2. Section 65, sub. a provides:

"Dividends of an equal per centum shall be declared and paid on all allowed claims, except such as have priority or are secured."

It is Debtor's contention, however, that the Bird decision is not a precedent for the case at bar, since it was a liquidation proceeding and not one under Chapter XI, and because the facts of that case are entirely different from those here.

The argument that the Bird principle cannot be applied to a Chapter XI proceeding is without merit. There is no language in that decision which shows any intention of the court to limit it, nor can any logical reason to do so be found. Speaking for a unanimous court, Woodrough, J., held that bankruptcy is not precluded from applying equitable principles and that it could order distribution of the assets "to accord with the rights of the parties, as such rights were fixed by their own contract." 78 F.2d at page 373. This is just as true under a Chapter XI proceeding as under a liquidation proceeding, and a court may enforce all contracts which do not contravene public policy or the spirit of the Bankruptcy Act.

The second contention of Debtor, that the facts in the Bird case are substantially different from those here, raises a more troublesome question. There, the subordinating creditors actually filed for and attempted to collect dividends allowable on their claims. The court had little difficulty finding that this violated the agreement. In the case at bar, however, Freedman, the prior creditor, has made no attempt to personally collect the dividend due on his claim, but instead has waived all his rights to share in any distribution. Because of this difference in facts, Debtor correctly maintains that the Bird case is not authority here, since the principles which were determinative there cannot be applied to this situation.

The referee, however, did not rely upon the Bird case as direct precedent for his ruling, but rather he cited it as authority for finding prior agreements valid and for exercising equity powers in bankruptcy. He determined that the agreement created an equitable assignment on behalf of Delaware Mills and ordered that the money be paid to it. Although this court is sustaining this order, I do so for reasons different from those found by the referee.

While it is true that the rights of the parties under a contract claimed to constitute an equitable assignment are to be determined by the law of the state where the instrument was executed, there are no New Hampshire cases to guide us, see Pollard v. Pollard, 68 N.H. 356, 39 A.2d 329; Conway v. Cutting, 51 N.H. 407, and therefore we must look to federal principles. Measuring the facts of this case to those principles, it is clear that this was not an equitable assignment. All that Freedman agreed to do was forego collection, but even if he had gone further and promised to collect and then turn the money over to Delaware Mills, Inc., it would not have been sufficient. "An agreement to pay out of a particular fund, however clear in its terms, is not an equitable assignment; a covenant in the most solemn form has no greater effect." Christmas v. Russell, 14 Wall. 69, at page 84, 81 U.S. 69, at page 84, 20 L.Ed. 762.

> "The courts have recognized that an agreement to pay out of the particular fund, however clear in terms, is not an equitable assignment. To constitute an equitable assignment, the intent to do so and its execution are indispensable. The assignor must not retain any control over the fund, any authority to collect, or any power of revocation. To do so is fatal to the claim. There must be a transfer of such a character that the fund holder can safely pay, and is compelled to do so, even though he be forbidden by the assignor." East Side Packing Co. v. Fahy Market, 2 Cir., 1926, 24 F.2d 644, at page 645.

"No particular phraseolgy is required to effect an assignment * * *." Lone Star Cement Corporation v. Swartwout, 4 Cir., 1938, 93 F.2d 767, at page 769. "The ultimate test is the intention of the assignor to give and the assignee to receive present ownership of the

claim." 2 Williston on Contracts (Rev. Ed.) par. 428, page 1232.

█ In the case at bar, there was no manifestation of intention, either written, oral, or by conduct, on the part of Freedman to relinquish control, or to make any appropriation to Delaware Mills, Inc. Therefore, no equitable assignment was created, nor is there an equitable lien. Nevertheless, Delaware is entitled to receive the dividend.

█ When Freedman's claim was filed and allowed, he was faced by a dilemma for he apparently had two choices of disposition, either he could waive the claim or he could accept payment for himself. He was barred from doing either. The forbearance agreement prevented him from collecting and retaining any money on his own behalf so long as Delaware's claim had not been satisfied up to the agreed sum. As a result, it might seem that Freedman was actually fulfilling his contract when he waived all rights, because he was, in effect, forbearing. But equity will regard the substance rather than the form of every agreement and examine its purpose and intent. See 30 C.J.S., Equity, § 107, pp. 513–514. Applying this principle to the contract, it is obvious from its language that its intent and purpose was that Delaware's claim would be "satisfied and paid." Therefore, by looking behind the mere formality of forbearance, equity can take cognizance of the fact that Freedman, to a limited extent, undertook to assure payment of Delaware's claim up to $50,000. Although it is true that Freedman had no duties to perform other than to forbear, he is, at the very least, barred by the spirit of the agreement from taking any action that might prevent the satisfaction of Delaware's claim. By waiving his right to a dividend, Freedman is doing just that. He is returning the money to the debtor against whom Delaware Mills has no further rights since it has already accepted its full, legal share under the *Plan of Arrangement*. Thus Freedman was estopped from waiving his claim, for to do so violates the intent and purpose behind the agreement.

█ This is Freedman's dilemma. On one hand he is barred at law from collecting and retaining the dividend, while on the other he is estopped by equitable principles from waiving his rights. The answer to this paradox is that he holds the right to collect the dividend on behalf of another. He is a constructive trustee for Delaware Mills, Inc.

"By the well-settled doctrines of equity, a constructive trust arises whenever one party has obtained money which does not equitably belong to him, and which he cannot in good conscience retain or withhold from another who is beneficially entitled to it; as, for example, when money has been paid by accident, mistake of fact, or fraud, or has been acquired through a breach of trust, or violation of fiduciary duty, and the like." 4 Pomeroy's Equity Jurisprudence, par. 1047; quoted and approved in In re Northrup, D.C., 152 F. 763, at page 771.

The theory behind constructive trusts as defined by the Restatement would seem appropriate here.

"Where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it, a constructive trust arises." Restatement of the Law of Restitution, Section 160.

Furthermore, to apply the doctrine of constructive trusts to the case at bar would be in accordance with the liberal scope given the basic principles by the New Hampshire Supreme Court in Morgan v. Morgan, 94 N.H. 116, 47 A.2d 569. And also by the Court of Appeals for this circuit which said:

"* * * It is only by looking at the intent, rather than at the form, that equity is able to treat that as done which in good conscience ought to be done. * * * Equity always attempts to get at

the substance of things and to ascertain, uphold and enforce rights and duties which spring from the real relations of the parties. It will never suffer the mere appearance and external form to conceal the true purposes, objects and consequences of a transaction." Peoples-Ticonic Nat. Bank v. Stewart, 86 F.2d 359, at page 361, quoting from Pomeroy's Equity Jurisprudence.

Unlike an equitable assignment, it is immaterial that the parties had no intention of creating a constructive trust. The law creates it for them out of their relationship toward each other.

"Constructive trusts include all those instances in which a trust is raised by the doctrines of equity for the purpose of working out justice in the most efficient manner, where there is no intention of the parties to create such a relation, and in most cases contrary to the intention of the one holding the legal title, and where there is no express or implied, written or verbal, declaration of the trust. They arise when the legal title to property is obtained by a person in violation, express or implied, of some duty owed to the one who is equitably entitled, and when the property thus obtained is held in hostility to his beneficial rights of ownership. As the trusts of this class are imposed by equity, contrary to the trustee's intention and will, upon property in his hands, they are often termed *trusts in invitum* * * *." 4 Pomeroy's Equity Jurisprudence, par. 1044.

Professor Scott has pointed out that most attempts to define constructive trusts have been too narrow in scope. Nevertheless he offers a definition which seems to have met universal approval and is applicable to this case.

"A constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it. When a person holds the title to property which he is under an obligation to convey to another, and when that obligation does not arise merely because he has voluntarily assumed it, he is said to hold the property in constructive trust for the other and he is called a constructive trustee of the property. He is not compelled to convey the property because he is a constructive trustee; it is because he can be compelled to convey it that he is a constructive trustee." 4 Scott on Trusts (1956), par. 462, page 3103.

The petition for review is denied. The order of the Referee in Bankruptcy is sustained.