In the Matter of ITEMLAB, INC., Debtor.
No. 60–B–640.

United States District Court
E. D. New York.
Aug. 10, 1961.

See also 197 F.Supp. 5.

Louis P. Rosenberg, Brooklyn, N. Y., for debtor.

McLanahan, Merritt & Ingraham, New York City, for Dutch-American Mercantile Corp., Emanuel Becker, New York City, of counsel.

BARTELS, District Judge.

Petition to review an order of Hon. William J. Rudin, Referee in Bankruptcy, sustaining the objection of Dutch-American Mercantile Corporation ("Dutch") to the acceptance filed by Commercial Bank of North America ("Bank") of the plan of arrangement for the debtor under Chapter XI of 'the Bankruptcy Act, 11 U.S.C.A. § 701 et seq. Disallowance of the Bank's acceptance of the plan has resulted in the failure of the debtor to obtain acceptances by a majority of the creditors in number and amount and consequently, the adjudication of the debtor as a bank-. rupt.

The facts appear to be as follows: On April 4, 1960 Dutch loaned $50,000 to the debtor and obtained the consent in writing of Blanmill Realty Corporation ("Blanmill") to the subordination of its indebtedness to the indebtedness of Dutch until such time as Dutch should be paid in full on its loan. It is important to note that the debtor, Dutch and Blanmill all executed this agreement. At the time, the debtor was indebted to Blanmill in the amount of $87,000 and in turn Blanmill was indebted for the same amount to Popkin, president of the debtor corporation. Thereafter, on October 26, 1960, the debtor filed the present petition for an arrangement and on February 14, 1961 Blanmill transferred its claim against the debtor to Popkin who transferred to the Bank, as security for a preexisting indebtedness of Popkin to the Bank. Thereupon the Bank executed its acceptance of the plan.

The Referee determined that the Bank (1) failed to comply with General Order 21(3), 11 U.S.C.A. following section 53, in filing its claim, so that its claim could be neither counted nor voted, (2) paid no consideration for the transfer of the debtor's note and had knowledge of the fact that the debtor had filed a petition for an arrangement and therefore stood in no better position than Blanmill, its transferor, and (3) had no interest in the plan as proposed since it would receive nothing thereunder and hence was not a creditor "affected" within the meaning of Section 308 of the Bankruptcy Act ("the Act"), 11 U.S.C.A. § 708. On this petition the Bank concedes that it stands in the position of Blanmill and the claim shall hereafter be treated as Blanmill's.

The debtor is admittedly insolvent and its assets are insufficient in the event of liquidation to pay its creditors in full. The plan of arrangement provides for the issuance of debentures to the creditors in an amount equal to 25% of the creditors' claims so that under no circumstances would any creditor receive in excess of 25% of the amount due him. If Dutch receives 25% payment on its own claim plus 25% payment on Blanmill's claim, either in cash or debentures, Dutch will not receive payment in full of its $50,000 claim. Approval of the plan by a majority of the creditors in number and amount requires Blanmill's acceptance of the plan. Dutch is opposed to the plan and the question to be resolved is whether Blanmill or Dutch has the right to vote Blanmill's claim for the purpose of approving or disapproving the arrangement. The answer to this question depends upon the terms and effect of the subordination agreement executed by the three parties.

■■■ The rights of the parties under the subordination agreement must be determined by the law of New York[1]

and such agreements have been long recognized and enforced both by the New York courts and the courts of bankruptcy. Brooklyn Trust Company v. Fairfield Gardens, 1932, 260 N.Y. 16, 182 N.E. 231; In re Geo. P. Schinzel & Son, Inc., D.C.N.Y.1926, 16 F.2d 289; In re Aktiebolaget Kreuger & Toll, 2 Cir., 1938, 96 F.2d 768; Scolnick v. Connecticut Telephone & Electric Corp., 2 Cir., 1959, 265 F.2d 133, rehearing denied 2 Cir., 266 F.2d 821. It is immaterial that the proceeding is a Chapter XI proceeding and not a liquidation proceeding. In re Dodge-Freedman Poultry Company, D.C. N.H.1956, 148 F.Supp. 647, affirmed 1 Cir., 1957, 244 F.2d 314. Moreover, in adjudicating and enforcing the rights of parties under subordination agreements this Court sits as a court of equity and can order distribution either under liquidation or a plan of arrangement according to the rights fixed by the parties in their own contracts. Nothing in Section 65, sub. a, of the Act, 11 U.S.C.A. § 105, sub. a, providing for equal distribution of dividends, precludes such a determination. Bird & Sons Sales Corporation v. Tobin, 8 Cir., 1935, 78 F.2d 371, 100 A.L.R. 654; In re Handy-Andy Community Stores, Inc., D.C.La.1932, 2 F.Supp. 97.

Enforceability of the subordination agreement is not contested by Blanmill but it disagrees with the Referee in that it contends that Blanmill is a creditor under Section 308 of the Act whose interests are adversely affected by the plan and is therefore entitled to vote upon the plan. It claims that Scolnick v. Connecticut Telephone & Electric Corp., supra, and similar cases have no applicability to the case at bar because in those cases one entire class of creditors had subordinated their claims to an entire class of superior creditors which required the court to affirm the Referee's conclusion that the inferior creditor was not adversely affected by the plan.

1. Erie Railroad Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188; In re Dodge-Freedman Poultry Company, D.C.N.H.1956, 148 F.Supp. 647, affirmed 1 Cir., 1957, 244 F.2d 314.

The Court agrees that there is a distinction between these cases since it cannot be said herein that the class of creditors of which Blanmill is a member, is not adversely affected by the plan. All creditors, including Blanmill, are adversely affected by the plan and in this case there is no class of creditors that have superior rights to another group of creditors comprising a class. Subject to its private agreement with Dutch and the debtor, Blanmill has a right to assert its claim against the debtor in the same manner as the other general creditors. The Court is thus confronted with determining the effect of this limited subordination agreement.

The determination of the issue depends upon the interpretation of the agreement. Although it is silent as to voting of claims in bankruptcy proceedings, the agreement is a complete subordination agreement which became effective immediately and did not depend upon insolvency. Subordination agreements have taken various forms and have been enforced in bankruptcy courts upon different theories depending upon their terms to reach an equitable result.[2] For instance, in the Schinzel case, supra, the agreement to subordinate was signed by the bankrupt and some of the general creditors in favor of creditors supplying merchandise who were not parties to the agreement. The court held that an equitable lien had arisen in favor of the supplying creditors but only against those who had joined in the agreement. A similar result was reached upon similar facts in Searle v. Mechanics' Loan & Trust Co., 9 Cir., 1918, 249 F. 942. In the Handy-Andy case, supra, an agreement was signed by the creditors subordinating their claim to a bank, containing a promise of assignment in case of liquidation from which the Court seemed to imply an equitable assignment, and in the Bird & Sons case, supra, certain creditors agreed to subordinate their indebtedness to the indebtedness of future creditors which agreement the court specifically enforced.

In the Handy-Andy case the debtor did not join in the agreement, and in the Bird & Sons case it is unclear whether the debtor was a signatory. In both cases it was held that a court of equity in considering done that which should be done would enforce the contract between the parties. In the Dodge-Freedman case, supra, the inferior creditor executed a subordination agreement with the superior creditor upon which the corporation was not a signatory. The inferior creditor attempted to waive its claim to a dividend in order to defeat collection by the superior creditor. This, the court refused to permit, holding that while there was no equitable assignment the inferior creditor did hold its claim as a constructive trustee and that consequently any waiver by it was barred.

■■ The utilization of these various theories in the equitable enforcement of the subordination agreement has been the result of the difference in the terms of and parties to the agreement. Regardless of the approach, it is quite obvious that in each case substance and not form prevailed and that the intent of the parties was paramount. The fact that the subordination agreement in this case was signed by the three parties indicates a clear intent that immediately upon a determination of insolvency and the insufficiency of the assets of the debtor to pay Dutch in full from dividends on both its own claim and Blanmill's claim, the debtor was authorized by Blanmill to pay Blanmill's claim to Dutch. The latter being also a party to the agreement was in a position to then demand payment from the debtor. Thus Dutch became entitled to complete control over the claim. No further consent was necessary from Blanmill which no longer had any authority to collect or any power to revoke. It is true that there was no legal assignment of Blanmill's claim nor, until the happening of the above contingencies, was there an equitable assignment of said claim. But according to the terms of the contract it was the clear in-

2. 70 Yale Law Journal, p. 376.

tention of the parties, upon the occurrence of insolvency and insufficiency of assets for Dutch's claim out of the dividends of both claims, to make an immediate transfer of Blanmill's claim to Dutch. Moreover, there were specific assets which were held by the debtor for the payment of all claims upon which it could be said that the contract created an equitable lien in favor of Dutch in the amount of Blanmill's claim. No particular phraseology is required to create an equitable assignment and it has been observed that the test is whether the debtor would be justified in paying the debt to the party claiming to be the assignee and whether there was an intent to make a transfer of the claim. The Court is of the opinion that the requirements of an equitable assignment and an equitable lien have been satisfied in this case. See 2 Williston on Contracts (rev. ed.) §§ 428, 429, pages 1231 et seq. and also Thompson v. Erie R. Co., 1912, 207 N.Y. 171, 180, 100 N.E. 791; Hinkle Iron Co. v. Kohn, 1920, 229 N.Y. 179, 128 N.E. 113; In re Link's Will, 1940, 173 Misc. 217, 17 N.Y.S.2d 634. Under the constructive trust theory, either the debtor or Dutch in this case would hold in trust Blanmill's claim for the benefit of Dutch. See 4 Scott on Trusts (2d ed.) § 462, pages 3102 et seq. Considering the circumstances here presented, Dutch is entitled to Blanmill's claim either as an equitable assignee, lienor or beneficiary of a constructive trust.

Having decided that Dutch has the right to collect Blanmill's claim under any of the above theories, the next question posed is whether the right to vote the claim nevertheless remains in Blanmill. Since the vote attached to the claim is the only means of determining how and when the claim shall be enforced and the terms of payment, it would follow that the person entitled to collect the claim should be the person entitled to vote the claim; otherwise the result would be anomalous and would repose in the inferior creditor the power to use his vote to determine how the superior creditor shall collect a claim in which the inferior creditor no longer has an interest. Regardless of the theory of the derivation of the superior creditor's rights, they would be vitiated unless full control by means of vote or otherwise were simultaneously vested in him. To permit an assignee of a claim, even though it is only held by him as security, to vote the same to the extent of the amount due the assignee, is not without precedent. See Meinhard, Greeff & Co. v. Brown, 4 Cir., 1952, 199 F.2d 70. While in that case there was a split vote because the assignor retained an interest in the claim, the principle is clear. Here there is no such split and the vote attached to the entire claim vested in Dutch.

The other objections and issues raised upon this application are trivial and need not be considered.

The petition for review is denied. The order of the Referee in Bankruptcy is sustained. Settle order within four (4) days on two (2) days' notice.