**In the Matter of DISCON CORPO-RATION, Debtor.**

**No. 69–425–BK.**

United States District Court,
S. D. Florida,
March 12, 1971.

5. See, The Migratory Farm Labor Problem in the United States, United States Senate Report No. 91–83 (1969).

Gunn & Venney, C. Peter Buhler, Miami, Fla., for Discon Corp.

William L. Eagan, Arnold, Matheny & Eagan, P. A., Orlando, Fla., for Radiation, Inc.

## ORDER

FULTON, Chief Judge.

This cause came before the Court upon a petition filed by Radiation, Inc., a creditor of the corporation in arrangement, Discon Corporation, for review of an order of the Referee in Bankruptcy confirming a Chapter XI plan of arrangement.

Discon Corporation is a Florida corporation, organized in 1964, and engaged in the business of manufacturing and developing display devices and related electronic components which have commercial and military use. According to a prospectus issued by Discon in March, 1969, the company's sales have declined each year since its formation. The company has apparently never been financially successful. In March of 1969, in order to improve its financial position, the company offered for sale to the public a $500,000 issue of seven per-cent subordinate convertible debenturos. Nine months after the sale of these debentures, Discon filed its petition for arrangement under Chapter XI of the Bankruptcy Act, 11 U.S.C. §§ 701–799.

An arrangement under Chapter XI of the Bankruptcy Act may be by way of settlement, satisfaction, composition, or extension of the debtor's unsecured debts. It does not affect secured debt. A Chapter XI proceeding is not a liquidation as would occur in a straight bankruptcy; the debtor is given a reasonable opportunity to rehabilitate himself. 1 Collier Bankruptcy Manual ¶ XI–1.01 (2nd ed.) (1970); 9 Am.Jur.2d, Bankruptcy § 1287. Arrangement proceedings are governed by equitable principles and doctrines. In re Trans-Pacific Corp., 76 F.Supp. 623 (S.D.Cal.1948).

As stated, Chapter XI arrangements adjust only unsecured debts. These debts may be considered in one group, or they may be separated into classes. Section 351 of the Act (11 U.S.C. § 751) provides:

> For the purposes of the arrangement and its acceptance, the court may fix the division of creditors into classes
> . . . . .

Section 357 (11 U.S.C. § 757) provides:

> An arrangement made within the meaning of this chapter may include—
>
> (1) provisions for treatment of unsecured debts on a parity one with the other, or for the division of such debts into classes and the treatment thereof in different ways or upon different terms . . . . .

*See* 1 Collier Bankruptcy Manual ¶ XI–7.01 (1970); 9 Am.Jur.2d, Bankruptcy § 1318. A division of creditors into different classes and a treatment thereof in different ways or a failure to divide into classes must be done on a reasonable basis so that the arrangement is in the best interests of the creditors. In the matter of Hudson-Ross, Inc., 175 F. Supp. 111 (N.D.Ill.1959). To be in the best interests of creditors, the plan must give the creditors more than they would receive in liquidation. In re Peoples Loan & Investment, 410 F.2d 851 (8th Cir. 1969); Technical Color & Chem. Works, Inc. v. Two Guys from Massapequa, Inc., 327 F.2d 737 (2nd Cir. 1964).

Section 366 of the Bankruptcy Act (11 U.S.C. § 766) provides the Court with the prerequisites to confirmation of a Chapter XI plan. Before the Court may confirm, it must be satisfied that

the plan is "for the best interests of the creditors and is feasible."

Among Discon Corporation's unsecured creditors are the holders of the debentures sold less than a year prior to the time Discon filed its petition for arrangement. These debentures are subordinate debentures. The word "subordinate" is defined by Webster in the following manner:

Placed in a lower order, class, or rank: holding a lower or inferior position.

To place in a lower order or class: make or consider as of less value or importance.

Webster's Third New Int'l Dictionary, Unabridged (1967).

■ Even though equality among unsecured creditors is a fundamental principle in ordinary bankruptcy proceedings, In re Wyse, 340 F.2d 719 (6th Cir. 1965), agreements between creditors for subordination or postponement of their claims have traditionally been recognized and enforced by bankruptcy courts. In re Wyse, 340 F.2d 719 (6th Cir. 1965); Bird & Sons Sales Corp. v. Tobin, 78 F. 2d 371 (8th Cir. 1935); In re Aktiebolaget Kreuger & Toll, 20 F.Supp. 964 (D. D.C.1938); St. Louis Union Trust Co. v. Champion Shoe Machinery Co., 109 F.2d 313 (8th Cir. 1940); In re Itemlab, Inc., 197 F.Supp. 194 (D.C.N.Y.1961); In re Credit Indus. Corp., 366 F.2d 402 (2nd Cir. 1966); Elias v. Clarke, 143 F.2d 640 (2nd Cir. 1944); 3A Collier on Bankruptcy, #65.06 at 2294. Furthermore, whether the proceeding is a liquidation proceeding or one under Chapter XI is immaterial to the enforcement of the subordination agreement. In re Dodge-Freedman Poultry Co., 148 F. Supp. 647 (N.D.N.H.1956). "In adjudicating and enforcing the rights of parties under subordination agreements, this Court sits as a court of equity and can order distribution either under liquidation, or a plan of arrangement according to the rights fixed by the parties in their own contracts." In re Itemlab, Inc., 197 F.Supp. at 196. In Scolnick v. Connecticut Telephone &

Electric Corp., 265 F.2d 133 (2nd Cir. 1959), the Second Circuit Court of Appeals confirmed a plan of arrangement in which subordinate debenture holders were classified and treated differently than the unsecured general creditors. In that case, the debenture holders had completely subordinated their claims to those of all other creditors; the plan gave the debenture holders 5% of the face value of the debentures. The unsecured creditors received 15%.

■ Furthermore, both the indenture under which the Discon debentures were issued and the prospectus provide that

upon any dissolution, winding up or liquidation . . . reorganization, readjustment, arrangement, or similar proceeding . . . whether in bankruptcy, insolvency, or receivership proceedings or otherwise . . .

(a) the principal of (and premium, if any) and interest on all Superior Indebtedness shall first be paid in full in cash or money's worth, or provision made for such payment, before any payment is made on account of the principal of . . . or any interest on the Debentures . . . .

Discon Corp., Indenture dated February 1, 1969, § 4.03; Discon Corp., Prospectus dated March 4, 1969, at 20–1. Thus, the debenture holders have agreed that even in the event of an arrangement, their claims will be subordinate to those claims which are superior. If there is any question that under the present plan the debenture holders are at a real advantage, to the disadvantage of the general unsecured creditors, Discon's letter of May 11, 1970, to the debenture holders clarifies that question. According to the letter, written by Mr. O'Maley, President of Discon,

the debenture holders are receiving the most advantageous treatment of any of the unsecured creditors with claims in excess of $50.00. While the debenture is expressly subordinate to other claims, the plan ignores this subordination and treats the debenture claim-

ant on a par with other unsecured creditors whose claims exceed $50.00.

Respondent Discon has urged that the agreement should not be enforced, because the superior creditors have failed to show reliance upon the subordination agreement. However, the Discon indenture expressly waives the defense of reliance. Section 4.08 of the Indenture, at 33, provides:

> *Reliance by Superior Indebtedness on Subordination Provisions.* Each holder of any Debenture by his acceptance thereof acknowledges and agrees that the foregoing subordination provisions are, and are intended to be, an inducement and a consideration to each holder of Superior Indebtedness, whether such Superior Indebtedness was created or acquired before or after the issuance of the Debentures . . . and such holder of Superior Indebtedness shall be deemed conclusively to have relied on such subordination provisions in acquiring and continuing to hold, such Superior Indebtedness.

When presented with a similar claim of lack of reliance upon a subordination agreement, where reliance had been expressly waived, the Second Circuit Court of Appeals held:

> To permit the noteholders at this late date to engraft a condition of reliance onto their subordination agreements would result in granting them a windfall which has no justification in reason, equity or logic. * * * [It] is not without significance that subordinated debt such as that involved here is widely employed today in financing commercial enterprises. * * * To deprive lending institutions of the right to enforce lawful subordination agreements and require them to prove in each instance that they relied on such agreements in advancing funds to businesses would not only place in jeopardy literally billions of dollars of outstanding loans, but in all probability would prompt lending institutions to reconsider, and possibly curtail, their subordinated debt-financing activities . . . ..

In re Credit Indus. Corp., 366 F.2d 402, 410 (2nd Cir. 1966). In conclusion, therefore, a creditor can enforce in bankruptcy a subordination agreement which was executed for his benefit without alleging or proving that he relied thereon.

The present case is further complicated by the fact that there appears, at first glance, to be a conflict between the prospectus and the indenture as to the specific debts to which the debentures are subordinate. However, upon closer examination, it is clear that there is no conflict on this point. The prospectus provides that the debentures are subordinated to the prior payment in full of principal and interest on all superior indebtedness. "Superior Indebtedness" is defined by the prospectus as

> all indebtedness of the Company *for money borrowed* . . . whenever created or incurred . . . ..

The indenture also provides that the debentures issued thereunder will be subordinate to all superior indebtedness. The indenture defines "superior indebtedness" as

> all other indebtedness of the Company, whenever created or incurred . . . ..

This definition does not at first appear to be limited to all *money borrowed*; however, this is not so. "Indebtedness" is defined by the indenture as

> any indebtedness for *money borrowed* for the payment of which such corporation is primarily or secondarily liable . . . .. Such term shall be deemed to include any amounts in respect of rental or purchase obligations under any lease of real or personal properties . . . ..

Discon Corp., Indenture at 13, 15.

There is, however, an apparent conflict between the indenture and the prospectus provisions with regard to priorities between creditors in the event of Discon's insolvency. The prospectus provides

> in the event of insolvency, creditors of the Company who are not holders of

Superior Indebtedness or of Debentures may recover less, ratably, than holders of Superior Indebtedness, but may recover more, ratably, than holders of Debentures. Discon Corp., Prospectus at 20–1.

No comparable provision with regard to holders of non-superior indebtedness appears in the indenture. The indenture, in fact, makes no mention of non-superior creditors.

 According to Fletcher on Corporations, debentures, which are obligations representing unsecured indebtedness, are usually issued under an indenture in which a trust company agrees to supervise the execution of the debtor's covenants for the benefit of the debenture holders. 6A Fletcher Cyclopedia on Corporations § 2636 (1968). Corporate debt securities may not be offered for sale to the public unless they are issued under an indenture, and the indenture conforms to the statutory standards of the Trust Indenture Act of 1939. Furthermore, debt securities issued under such indenture must be registered in accord with the Securities Act of 1933. C.C.H., 1 Federal Securities Law Reporter ¶ 205–13 (1970). The registration statement or prospectus *may* include brief descriptions of the indenture provisions. C.C.H., 1 Federal Securities Law Reporter ¶ 207 (1970).

 To sell publicly corporate debt securities under the Trust Indenture Act and the Securities Act of 1933, the securities must be registered *and* the indenture under which the securities are sold must "qualify." 15 U.S.C. §§ 77iii, 77jjj. The purpose of the registration statement and prospectus is to prevent fraud by fully and fairly disclosing the nature and finances of the company to investors who contemplate investing in the company. Thus, the conflict between the indenture and the prospectus can be resolved on the basis of the two instruments' purposes. It is the indenture which spells out the debenture agreement; the prospectus, in this case, merely summarized it. Furthermore, the prospectus itself resolves any conflict between it and the indenture. At pages 19–23 of the prospectus, the terms of the indenture are summarized. It provides in part:

The Debentures offered hereby are to be issued under an indenture to be dated as of February 1, 1969, between the company and United States Trust Company . . . . *The statements under the captions are brief summaries of certain provisions of the Indenture.* Wherever particular provisions are referred to, *such provisions are incorporated by reference as part of the statement made and the statement is qualified in its entirety by such reference.*

By inadvertence or oversight certain rights of non-superior creditors were stated in the prospectus to exist which do not exist. The prospectus, however, cannot create these rights, for that is not its purpose. Further, the prospectus informed prospective debenture purchasers that they were buying *less* than they actually received. The purpose of the prospectus, to prevent fraud, was certainly not frustrated where purchasers received more than that for which they bargained. Further, any conflict must be resolved by reference to the indenture, incorporated by reference into the prospectus by the prospectus' own terms.

 There remains the problem of what was meant by "money borrowed"? The debentures are subordinate to "indebtedness for money borrowed," which includes "any amounts in respect of rental or purchase obligations under any lease of real or personal properties." Discon Corp., Indenture at 13, 15. "Borrow" is defined by Webster as "to receive temporarily from another, implying or expressing the intention either of returning the thing received or giving its equivalent to the lender." Webster's New Third Int'l. Dictionary, Unabridged (1967). "Money borrowed," therefore cannot be defined to include money *owed for goods purchased,* except where the indenture has included the same within its definition of indebtedness (amounts due under rental or lease

contracts of personalty or realty). It cannot be determined from the record before the Court which, if any, of the creditors would be superior to the debentures within the terms of the indenture. Apparently not all creditors may claim a superior position. However, it is clear that in view of the subordination agreement, the unsecured creditors may not be treated on a parity one with the other, for it would not be in the "best interests of creditors." Thereupon, it is

Ordered and adjudged that the petition for review be and the same is hereby granted, and the order of the Referee which confirmed the plan of arrangement be and the same is hereby set aside, and the proceeding is remanded to the Referee for proceedings not inconsistent with this order.

Done and ordered at Miami, Florida, this 12 day of March, 1971.