**In the Matter of FAS INTERNATIONAL, INC., Debtor.**

**No. 72 B 128–129.**

United States District Court,
S. D. New York.

Aug. 26, 1974.

Whitman & Ransom, New York City, for appellant.

Krause, Hirsch & Gross, New York City, for appellee.

GURFEIN, District Judge:

The United States Trust Company of New York ("U.S. Trust"), indenture trustee for $16,500,000 of 5% subordinated convertible debentures of the Debtor, and its counsel, Whitman &

Ransom, appeal from an order of Referee (now Bankruptcy Judge) Roy Babitt denying them allowances upon the confirmation of an arrangement under Chapter XI of the Bankruptcy Act (11 U.S.C. § 701 et seq.). Judge Babitt in a memorandum opinion denied the allowances upon the ground that the Bankruptcy Act made no statutory provision for such allowances in a Chapter XI proceeding and that the Bankruptcy Court could not, under its equity power, enlarge upon the statute. The appellants contend that the question is one of first impression.[1]

The facts are somewhat unusual. U. S. Trust was the Successor Indenture Trustee of the subordinated debenture issue described above. The Debtor filed a petition for an arrangement under Chapter XI on February 8, 1972. In addition to the unsecured subordinated debenture holders there were also unsecured bank creditors and unsecured trade creditors.

Shortly before filing the petition and immediately thereafter the Debtor negotiated with the consortium of bank creditors and with the trade creditors but not with the Indenture Trustee. The Debtor and the other creditors apparently took the position that since the debentures were "subordinated" debt, their holders could have no voice in the negotiation of a settlement.

Appellant nevertheless sought proofs of claim from the debenture holders and attempted to vote the election of an official creditors' committee which would include debenture holders, and for the election of an officer of appellant as tentative trustee. In the meantime it had retained the services of Whitman & Ransom, the other appellant, as its attorney on behalf of the debenture holders.

The first meeting of creditors was held on March 14, 1972. The attempt of appellant to vote its proofs of claim was resisted. The question of the right to vote the proofs of claim under Section 338 of the Act, 11 U.S.C. § 738, was submitted to the Referee who held that the debenture holders in the aggregate could vote only one claim. This, in effect, disenfranchised the public debt from separate representation on the official committee. An appeal from this ruling was not perfected.

Counsel for the Indenture Trustee was not without resources, however. Although the indenture provided for the assignment of the subordinated debt to the senior indebtedness in the event of insolvency of the debtor, he came up with the contention that, because of certain ambiguities of language in the indenture, the "subordinated" debentures might not be subordinate in an arrangement that contemplated the acceptance of common stock by the bank creditors. Suffice it to say that the argument of the Indenture Trustee prevailed to the extent that the "subordinated" debenture holders were recognized as a class which had not been wiped out because of the failure to make whole the creditors with priority.

■ Normally, subordinate debt is deemed worthless if the primary debt is not satisfied in full. See In re Itemlab, Inc., 197 F.Supp. 194 (E.D.N.Y.1961). By virtue of their argument that they were not in fact "subordinate," the debenture holders were taken into the negotiations and emerged with a part of the rehabilitated company for their own. The negotiations had taken place before the time to file a petition for review of the Referee's rule had expired, and were conducted under threat by the debenture holders that they would pursue the appeal. An agreement was reached that the appellant would withdraw its petition for review and that the Plan would provide that the debenture holders would receive in the aggregate 196,092 shares of the common stock of the Debtor, representing about 20% of the stock of the Debtor to be outstanding after confirmation.

---

1. A brief was filed on behalf of interested banks and trust companies as *amici curiae*.

All unsecured creditors received stock and no cash. The Plan also provided for the election of an officer of the appellant as one of five directors.

Appellant further asserts that the legal fees incurred by the appellant were to be paid by the Debtor subject to the approval of the Bankruptcy Court. Counsel for the Debtor denies that any such agreement "oral or written" was ever made. No writing has been tendered in support of the alleged agreement.[2]

In the fixing of allowances the Referee denied the applications of the Indenture Trustee and of its counsel for lack of statutory authority or equitable power. Both the Trustee and counsel brought this petition for review. The order of the Referee is confirmed.

The Court of Appeals for this circuit has enunciated the rule that "the bankruptcy court lacks power to grant, and the policy of the Act is against, compensation not expressly provided for by the Act." Lane v. Haytian Corp., 2 Cir., 117 F.2d 216, 219, cert. denied, 313 U.S. 580, 61 S.Ct. 1101, 85 L.Ed. 1537 (1941); see also Guerin v. Weil, Gotshal & Manges, 205 F.2d 302 (2 Cir. 1953). This rule was expressed in a proceeding for an arrangement in a Chapter XI proceeding. Unless *Haytian* has been eroded in this respect, the search must be limited to whether compensation is expressly granted under the Act.[3] Appellants concede it is not, but they argue that the Bankruptcy Court may, never-theless, award compensation upon principles of equity. This requires a brief review of the provisions of Chapter XI and an inquiry into whether Congress intended to foreclose allowances to all except the official committee.

■ Section 338 of the Act provides for the election of an official committee of creditors to represent the interests of all unsecured creditors. Under Section 337(2) the Court fixes a time when the debtor is required to deposit "the actual and necessary expenses incurred . . . by the committee of creditors and the attorneys or agents of such committee." As Judge Clark noted in *Haytian, supra,* these references are to a *single* committee. 117 F.2d at 219.[4] Section 339(2) of the Act provides for the payment of expenses of such a committee and the fees of its counsel. The Act does not provide for the reimbursement of expenses or the payment of legal fees to any other person or body representing creditors in Chapter XI proceedings.[5]

Appellants recognize that an Indenture Trustee was denied an allowance in a Chapter XI proceeding by our late brother McLean in Matter of Straus-Duparquet, Inc., (unreported), No. 65 B 181 (S.D.N.Y. May 10, 1966), but they contend that the case is not analogous for the reason that the Indenture Trustee in *Straus* represented debenture holders who were not subordinated and hence ranked *pari passu* with other unsecured creditors. The infer-

2. There is no need to find whether a "firm engagement" was undertaken, for a debtor may not bind itself to pay for the services of committees other than the official committee. Lane v. Haytian Corp., *infra.*

3. *Haytian* was overruled in 1952 by an amendment to Section 337(2) and Section 338 to the extent that the *Haytian* court had barred payment to an unofficial committee for services rendered before the arrangement. See 8 Collier, Bankruptcy § 5.34 n. 39; In re Casco Fashions, Inc., 490 F.2d 1197, 1202–1203 (2 Cir. 1973).

4. While there have been amendments since 1941, they do not touch upon this point.

5. I am aware that the Second Circuit has recently applied Section 62 as authority for an allowance of fees to the attorneys for a debtor in possession in an *abortive* Chapter XI proceeding in a subsequent bankruptcy. In re Casco Fashions, Inc., *supra.* Cf. Robinson, Wolas & Hagen v. Gardner, 433 F.2d 1104 (9 Cir. 1970). I think that where the arrangement has been confirmed, the statutory limitations in Chapter XI itself apply.

ence is that the Indenture Trustee in *Straus* duplicated the work of the official committee because there was no conflict of interest between the debenture holders and the other unsecured creditors. *Per contra* it is suggested that, in view of the position of the debenture holders here as adverse to the other unsecured creditors, the official committee could not adequately represent them and, hence, they were entitled to separate representation in passing upon the adequacy of the Plan.

In addition to this equitable argument, the appellants suggest, and the *amici curiae* stress, that indenture trustees are generally not required under the indenture to provide legal services unless cash is advanced by the debenture holders,[6] and hence disallowance of expenses to the trustee will result either in inaction to the detriment of the debenture holders or pressure to move the arrangement into a Chapter X reorganization where expenses can be reimbursed and compensation allowed.

The argument really comes down to this. Since compensation is allowed to an indenture trustee in a Chapter X reorganization (Section 242 of the Act, 11 U.S.C. § 642), (and in a railroad reorganization (Section 77[c][12] of the Act, 11 U.S.C. § 205[c][12])), in a particular arrangement, as here, which happens to be appropriate for a Chapter X proceeding as well as a Chapter XI arrangement, it ought to be recognized that compensation should in equity be allowed in Chapter XI just as it is allowed in Chapter X.

The argument is appealing but it brings into focus the relative functions of Congress and the Courts. I would assume that, despite the rule laid down in *Haytian*, if it appeared that Congress had overlooked a situation in Chapter XI which was precisely the same as it provided for in Chapter X, a court of

equity, which the Bankruptcy Court is, Bank of Marin v. England, 385 U.S. 99, 103, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966), might supply the omission.

The difficulty with that solution is twofold. First, although it is strange that Chapter XI, which was supposed to take care of cases that were relatively simple, has now come to include, as a matter of course, arrangements where there is unsecured public debt, Congress has seen fit to leave the situation respecting compensation and reimbursement undisturbed. Petitions may be brought by the Securities and Exchange Commission or a party to move the proceeding into Chapter X. Section 328 of the Act, 11 U.S.C. § 728. If that is not done or refused by the Court, the debtor with an outstanding unsecured public issue can remain in Chapter XI.

Congress assumed, moreover, in enacting Chapter XI that there might be separate classes of creditors, for it provided that "the court may fix the division of creditors into classes and, in the event of controversy, the court shall after hearing upon notice summarily determine such controversy." Section 351 of the Act, 11 U.S.C. § 751. The assumption is that there might be controversy among creditors serious enough to require adjudication.

In spite of this recognition, the Act provides, as we have seen, for only a single committee, as distinguished from "committees" in Chapter X. (Section 242 of the Act, 11 U.S.C. § 642); Lane v. Haytian Corp., *supra,* 117 F.2d at 219. This assumes that conflicting interests would be subsumed under a single committee which is charged with representing "the creditors" without exception. Section 339 of the Act, 11 U.S.C. § 739. The failure to provide reimbursement and compensation to others than the official committee does not appear to have been an oversight. If a conflict of in-

---

6. See Model Debenture Indenture Provisions of the Corporate Debt Financing Project of the American Bar Foundation, Section 601(c)(4).

terest among creditors is enough to found separate claims for compensation to their respective representatives, the Act should be amended so to provide.

 Second, so far as the equity power of the court is concerned, it is still doctrine that expenses and allowances by the Bankruptcy Court shall be limited to statutory allowances. Appellants have cited no case, except a bankruptcy referee's decision in the Eastern District, In Matter of Fotochrome, Inc., D. C., 346 F.Supp. 958 (1972), where the conceded equity powers of the Bankruptcy Court have been used to award compensation without a statutory basis in a Chapter XI proceeding.[7] I agree with Judge Babitt that since Congress has decided who may be reimbursed and compensated, an equity court may not enlarge upon legislation which is both an expression of policy and unambiguous.

Even if an equity court should wish to venture into the legislative domain, it would be faced with problems. Is every indenture trustee entitled to compensation from the debtor's assets even though its debenture holders rank on a par with the other creditors? Is an indenture trustee who represents truly subordinated debenture holders entitled to compensation where the primary debt cannot be paid in full? Is a special case made where the debentures though in form subordinated contend that they are entitled to rank with primary debt? If allowances may be made to indenture trustees in Chapter XI, may they also be made to more than one committee of unsecured creditors as in Chapter X? The answers to these and similar questions are of the very essence of the legislative process. I believe they should not be determined by a court as part of its equity jurisdiction, since they involve policy questions within the framework of an integrated legislative scheme.

On petition for review, the decision of the Bankruptcy Judge is confirmed.

---

7. Judge Friendly in In re Casco Fashions, Inc., *supra*, relied primarily on a statutory provision, Section 62, (11 U.S.C. § 102) to allow fees, *in a subsequent liquidation bank-* *ruptcy*, to attorneys for the debtor in possession in the aborted Chapter XI arrangement.